Gilbert T. Rafferty et al., Partners, Doing Business as McClure & Company, Plffs. in Err., *v.* Masonic Bank.

In an action to enforce the liability of defendant for collecting a check, *held,* that if the check was loaned by plaintiffs to the defendant bank with the agreement on its part that it would not collect the check but would return it in a few days, and defendant did collect it out of funds of plaintiffs and receive the money on it, the plaintiffs would be entitled to recover the amount of the check with interest; but if the check was given for a debt due to defendant and was to be held by it for only a few days, and on a failure to pay the debt the check was afterwards collected, plaintiffs could not recover.

(Argued October 28, 1886. Decided November 15, 1886.)

October Term, 1886, No. 53, W. D., before GORDON, TRUN-KEY, STERRETT, GREEN and CLARK, JJ. Error to Common Pleas No. 1 of Allegheny County to review a judgment on a verdict for defendant in an action of assumpsit. Affirmed.

This action was brought by Gilbert T. Rafferty, Charles J. Donnelly, and B. H. Rubie, partners as McClure & Company, against the Masonic Bank of Pittsburgh, to enforce the liability of defendant for collecting a certain check. With the special count in the *narr.* were added the common counts including that of money had and received.

November 28, 1882, a check on the Allegheny National Bank was procured from McClure & Company, to the order of the Masonic Bank, for the sum of $25,000. This check was certified by the cashier of the Allegheny National Bank and held by the Masonic Bank until December 30, 1882, when it collected the same of the Allegheny National Bank. The plaintiffs alleged that this check was loaned to the Masonic Bank by plaintiffs, with the agreement on the part of the bank that it would not collect it but would return the same in a few days.

The contention of plaintiff was supported by Rafferty's testimony and in part corroborated by the evidence of one McCandless, cashier of the Allegheny National Bank.

Further facts appear from the charge of the court.

At the trial A. O. Tintsman, and Charles B. McLean, cashier of defendant bank, were called by the defendant. On their ex-

amination in chief they denied that the check was loaned by Mc-
Clure & Company to the Masonic Bank, but say that the check
was loaned to Tintsman.    On cross examination the same wit-
nesses admitted that at the time the check was loaned it was
agreed in the presence of McLean, cashier of defendant bank,
that McClure & Company's funds were not to pay the check, but
the same was to be paid out of the funds Tintsman would raise.

On the trial defendant alleged that subsequently Tintsman
really paid this check to McClure & Company.

It appears that on January 10, 1883, Tintsman made a writ-
ten agreement (set out in the charge of the court) to sell one half
of certain coke works, clear of all encumbrances, for $54,500.
Tintsman testified that on January 16 he asked Donnelly, of the
firm of McClure & Company, for a statement of the matter and
received the following statement, which was put in evidence and
marked Exhibit 4.

A. O. Tintsman,

In account with McClure & Company                        Dr.

1882.

| | | | |
|---|---|---:|---:|
| Dec. 4. | Balance, .................... $ | 95 | 92 |
| " 30. | Coke, . .................... | 145 | 63 |

1883.

| | | | |
|---|---|---:|---:|
| Jan. 10. | Cash, Check of November 28, 1882, | 25,000 | 00 |
| " 10. | Cash, . .................... | 5,000 | 00 |
| " 11. | " .................... | 3,000 | 00 |
| " 13. | " to take up demand note, November 28, 1882, with interest on same, .................. | 30,274 | 17 |
| " 9. | Bills receivable for his note due to-day, not taken up, at First National Bank, and on which had to waive protest, .............. | 3,000 | 00 |
| March 6. | Cash, Allegheny National to take up his note due to-day, ........ | 2,000 | 00 |
| " 5. | Cash, Discount on $2,000 for 60 days, . .................... | 24 | 89 |

Cr.

| | | | |
|---|---|---:|---:|
| Jan. 20. | Cash, Check, C. S. O. Tintsman, on Penn Bank,..............$ | | 54 25 |
| " 1. | Bills receivable for his note, dated November 28, 1882, payable on demand, discounted at Allegheny National Bank for his accommodation, . . ................. | | 30,000 00 |
| | Rising Sun Purchase, ......... | | 37,593 00 |
| Feb. 28. | A. O. Tintsman & Company,..... | | 145 63 |
| March 5. | Cash, Check, C. S. O. Tintsman, on Penn Bank, ................. | | 24 89 |
| Aug. 31. | Balance, | | 722 64 |
| | | 68,540 41 | 68,540 41 |

| | | | |
|---|---|---:|---:|
| Sept. 1. | Balance, . . .............722 64 | | |
| 1885. | | | Cr. |
| Feb. 28. | A. O. Tintsman & Company Balance transferred, . . ......... | | 3,887 01 |
| | | | Dr. |
| Feb. 28. | Balance to suspense account, 3,164 37 | | |
| | | 3,887 01 | 3,887 01 |

| | | |
|---|---:|---:|
| Rising Sun Purchase, Credited to A. O. Tintsman as above,.. | | 37,593 00 |
| One half of Sherrick mortgage and accrued interest (33,814.-00) to January 1, 1883,...... | | 16,907 00 |
| | | 54,500 00 |
| Add Mellon judgment,......... | | 28,952 31 |
| | $ | 83,452 31 |

It was claimed by defendant that this operated as a payment. The plaintiffs contended that this was not an application of any

money to the check, but was intended to show how the purchase money would be applied if Tintsman carried out his agreement and conveyed to plaintiffs the coke works freed from liens. It appeared that investigation proved that the property was covered with liens and that the purchase price was exhausted in paying the liens as follows:

| | |
|---|---:|
| To the Mellon mortgage | $28,952 31 |
| To the Sherrick mortgage | 16,907 00 |
| Cash to Tintsman | 8,000 00 |
| Total paid by McClure & Company | $53,859 31 |

Plaintiffs contend that if they attempted to secure payment of this check from Tintsman and failed in the attempt, such attempt would not of itself prevent a recovery in this action.

The plaintiffs called Rafferty to prove the circumstances under which the check was given, the fact that notice was given to the Masonic Bank not to collect the same, and that the check was actually collected and charged to the account of McClure & Company, in the Allegheny National Bank.

On cross-examination the defendant was permitted to ask him, under objection and exception by the plaintiffs, whether Tintsman did not, subsequently and sometime in January, 1883, pay to McClure & Company the amount of the check. Fourth assignment of error.

In the same cross-examination the court permitted defendant's counsel, under objection and exception by the plaintiffs, to ask the witness whether a certain paper was not a copy of entries from their books of an account between McClure & Company and Tintsman, and about an agreement for the sale of the coke property. Fifth and sixth assignments of error.

McLean, called as a witness for defendant, testified in chief that the Masonic Bank received $25,000 on this check and credited the money, $5,000 to Tintsman and $20,000 to the commonwealth of Pennsylvania. Plaintiffs, on cross-examination, asked the witness how much Tintsman's account at that time was overdrawn with the Masonic Bank; objected to by defendant as not cross-examination; objection sustained and exception noted. Seventh assignment of error.

Plaintiffs, *inter alia,* presented the following points:

2. Even if the jury should find that the plaintiffs loaned their check for $25,000 to A. O. Tintsman and not to the defendant, but the agreement at the time of the loan was that the check should not be collected, and the cashier of defendant was then present and heard this agreement, and said defendant received said check with a knowledge of the terms upon which it was loaned, and the defendant nevertheless did subsequently collect said check and receive the money on the same, then plaintiffs would have a cause of action against said defendant for the money received on said check on the collection of the same.

*Ans.* Refused. First assignment of error.

3. Even if the jury should find that the $25,000 check of the plaintiffs was loaned for Tintsman's benefit to the defendant bank, but with the agreement made at the time between Tintsman and Rafferty that said check was not to be collected or paid out of the money of plaintiffs, but out of the money of Tintsman, and the cashier of defendant bank, with the knowledge of this agreement, received the said check and afterwards, in disregard of this agreement and without plaintiffs' consent collected said check out of funds of plaintiffs, then the plaintiffs may recover the money received on said check, unless the defendant has shown the same was subsequently paid by Tintsman.

*Ans.* Refused. Second assignment of error.

4. If subsequently to the collection of the $25,000 check the plaintiffs endeavored to secure the amount of said check from A. O. Tintsman in a contract for the purchase of the coke works, but were unsuccessful in said attempt, this would not prevent a recovery in this case.

*Ans.* Refused. Third assignment of error.

The court, COLLIER, J., charged the jury as follows:

The plaintiffs in this case, by their declaration and by the testimony of their witnesses, particularly that of one of the plaintiffs, allege that the defendant bank was loaned by them, through Mr. Rafferty, their certified check on the Allegheny National Bank, with the distinct agreement and promise that the check itself should be held for a time, but not collected, and returned to the plaintiffs. Mr. Rafferty testifies to that and adduces other testimony in corroboration thereof. You will observe that the plaintiffs' theory and testimony is that they loaned the defend-

ant bank their certified check for $25,000 with a distinct agreement by the bank not to use the check, and to return it; that the bank did not return it but used it contrary to that agreement, and they ask that they be paid the amount the bank received upon the check, to wit, $25,000, with interest.

Now in support of this theory Mr. Rafferty, the first witness, gives you a detailed statement of the facts as he understood them. He said Mr. Tintsman wanted to borrow $25,000 from him; he wouldn't lend it to him; he then said that he wanted it for the bank and after several consultations he went with him, and they met the cashier of the bank in Mr. Reineman's saloon; that there the matter was talked over and the understanding and agreement was there, in the beginning, that he should lend the bank the check, get a certified check, or get a check and loan it, and the bank would not dispose of it, would use it temporarily and then return it.

He says they went from the restaurant to the Allegheny Bank, to carry that understanding into effect; that when they got there they saw the cashier, Mr. McCandless; that the matter was stated to him and in pursuance of that statement a check was drawn up; but the plaintiffs having no money, or not sufficient money there to make the check good, there had to be means provided under the direction of Mr. McCandless. As said by one of the counsel, it would be rather an improper proceeding for a man to certify a check, when the bank hadn't funds of the man whose check it was. It would be a violation of good banking law if not the law of the United States. They had to draw up a note ($30,000) to get funds in the bank to sustain this check they were going to give. It is alleged that at that time Mr. Tintsman didn't owe anything at all to Mr. Rafferty, but am I correct about that?

Mr. Dalzell: "I don't think there was any evidence on that subject."

The Court: My impression is—my impression of it does not bind you, I use that to illustrate the law—my impression is that at that time there was no evidence to show that Mr. Tintsman was indebted to Mr. Rafferty or McClure & Company; the firm which was to give the check became the indorser. The bank discounted the note and put it to the credit of this check, that is, either to McClure & Company, or held it to back the check with, so that when certified as good, it, the bank, would have some-

thing to rely upon if called on to pay it, would have some funds to pay it with.

When that check was certified good, it was, as to the parties who held it, the same as money; they could come and get the money whenever they pleased. Mr. Rafferty states, if I understand him correctly, at about that time or somewhere about there, before he gave the check to Mr. McCandless, the cashier, he distinctly stated to him: "This is the understanding and agreement,"—he alleges he used the word agreement,—"that this check is to be returned and not to be used," and that that was agreed to. He then alleges that after he had given the check the matter went on some time, and Mr. McLean, the cashier, came out to his house and spoke about this check; and that at this time he told Mr. McLean distinctly that the plaintiffs were not to pay it, that the understanding and agreement was that they should not pay it.

He further says that he went down to the defendant bank and gave notice that he held them for it, that he had loaned the check; and that after that they took the check to the Allegheny National Bank and got the money on it.

The plaintiffs called Mr. McCandless, the cashier of the Allegheny National Bank, who says his understanding, as he believed, gathered from the parties, was that the check was loaned and not to be collected, and that after he found that it had been presented he sent word down to the cashier, McLean, that his understanding was, that was not to be paid, although he would have to pay it as he had certified; and Mr. McLean denied it, said if he did say anything of that kind he didn't mean it.

That, together with some other matters, is the main cause of the plaintiffs. I do not pretend to go into details. They have called some witnesses to contradict Mr. Tintsman. They say Mr. Tintsman told them that this check was not to be collected; and another witness said that he told him that he borrowed it for the bank; that he got it for the bank; that the bank had got it. Now those declarations are not declarations against the defendant at all, but they are allowed in evidence to contradict the witness; they bear upon his credibility. The law allows these contradictions, for the purpose of affecting the credibility of a witness.

Now if you believe the weight of the evidence (the strength of the evidence favors this theory of the plaintiffs, and that the

check was collected, which is not disputed), the plaintiffs would be entitled to recover the amount of that check, with interest, from the time the defendant bank presented it. If those facts are believed from the weight of evidence, the plaintiffs would be entitled to recover, or if you do not believe the loan was actually to the bank, was to Tintsman, but the bank expressly agreed when it took that check, although it knew of the loan, that it would not collect it, your verdict should be for the plaintiffs.

Now you come to the defendant's side. The defendant has an entirely different theory, and it has called witnesses which, if believed, make out a very clear case in its favor. The bank alleges that Mr. Tintsman owed the state of Pennsylvania, through Mr. Nutt, $20,000; that he owed the defendant bank $5,000; that he was indebted to it at the time; that the first of the month of December was coming on and the state treasurer's account being in the Masonic Bank, it was desirable to have it fixed up, and Tintsman wanted to get $20,000 to deposit there to make his account good with Mr. Nutt, or the state, whichever you choose to say; that he was very anxious about it, that he was "in a hole;" as one of the witnesses, I think the plaintiff, said: "My friend Tintsman is in a hole;" and under such circumstances Tintsman wanted to get ready, they wanted to arrange it the best way they could; that he must have that $20,000 on deposit by the first of the month if possible; that, under such circumstances, Tintsman got his friend, Mr. Rafferty, to lend this check to him, the bank to get it, but for Tintsman; that when they got to Reineman's they talked the matter over (I believe there were only three present there, Tintsman, Rafferty, and McLean); and that the conversation was not that the bank never would collect the check, and return it, but would hold it for a few days (I think McLean says ten days), would hold it so that this agreement could be carried out, because if the check was certified, they could use it as money in the bank; and that there was no such arrangement as is testified to on behalf of the plaintiffs, nor such an agreement. They allege that they went to the bank; that the same understanding was had there that Tintsman was getting the money; it was helping Tintsman; the check was given for that purpose and with the understanding and agreement it should be only held a few days, say ten days.

Now that is the theory of the defendant, and it has called Mr. Tintsman, Mr. McLean, and other witnesses to sustain it. It

further shows that Mr. McLean, finding the thing was running on, went out to see Mr. Rafferty; and as to what occurred there, McLean and Rafferty disagree, Mr. Rafferty saying one thing and Mr. McLean another. Mr. McLean says that he went out there on account of this note, to see about it; and that he told Rafferty that the bank would have to put it in, and he says Rafferty didn't pretend at that time that it wasn't to be collected but wanted more time; that after that Rafferty did go down to the bank; that he saw the president; they all went in to the president about it. The president, Mr. Batchelor, says that is the first he knew about taking this check to hold, and all Mr. Rafferty then wanted was (he didn't pretend it was not to be collected) time, and soon after that the bank—finding he didn't do anything—collected it.

It is further testified that after waiting a good while through December, until the latter part of December, Mr. Rafferty told Mr. Tintsman to tell the bank to go on and get the money; get what they wanted, that is, and that the bank then did so, did take the check to the Allegheny National Bank and got what they wanted. Now, if that is true, if there was no such arrangement or if the agreement was only to hold it for a reasonable time,—the plaintiffs' check for Tintsman's debt in the bank, —it is a perfect defense and the plaintiffs could not recover.

The testimony is conflicting, and it may give you some trouble in determining it. We do not determine it for you. You do that. Bue in determining it you must remember that the rule is that the burden is on the plaintiff to make out his case; he must make it out by the preponderance of evidence, and if by the preponderance of evidence he does not satisfy you that he is entitled to recover, he is not entitled to a verdict, and your verdict should be for the defendant. But if he satisfies you by the preponderance, the weight, of evidence, that his story about the case is the correct one, he is entitled to recover.

Then the defendant has presented to you another defense, and it is this: it alleges that even if it did make that agreement (*i. e.,* if the cashier of the bank did make such an agreement) Tintsman afterwards paid the amount of the check to McClure & Company. If you believe that, the plaintiffs could not recover. Now the way it is alleged to have been paid is by the sale of the

Rising Sun Coke Works by Tintsman to the plaintiffs, under this agreement, which I will read to you:

"It is agreed this 10th day of January, A. D. 1883, between A. O. Tintsman of the first part, and Chas. Donnelly and G. T. Rafferty of the second part, all of Allegheny County, Pennsylvania, as follows, to wit: said first party agrees to sell and convey by general warranty deed, in fee simple, clear of all encumbrances, unto said second parties, all the undivided one half of all that certain tract of land and coal situate in East Huntington township, Westmoreland county, and known as Rising Sun Coke Works, together with all stock, fixtures, and improvements, being the same land and coal conveyed to said first party by Peter Sherrick and Jacob Sherrick.

"Said second parties agree and promise to pay said first party in consideration for the said sale and conveyance of said coke works, $54,500—$5,000 cash, the receipt whereof is hereby acknowledged; $13,000 being one half of a certain mortgage on the whole of said coke works, and $36,500 on the delivery of a deed, as aforesaid, either in cash or in taking up the commercial paper of said first party on which said second parties are now liable.

"Further, it is agreed that said second parties are to go into possession at once, and have all product and profits of said property from January 1, 1883, and pay all bills contracted from said date, and said first party to pay all previous bills."

It is alleged that that agreement was made shortly after the 10th of January. A few days afterwards the deed was delivered, handed to the plaintiffs, and this statement (exhibit 4) you have in evidence, given by them to Mr. Tintsman, showing that in pursuance of that agreement credit was given him for this very check of $25,000 that the plaintiffs allege that they loaned to the bank and not to Tintsman. They give Tintsman credit in that statement for having paid that amount of money; and it is alleged that Mr. Tintsman assented to that, agreed to it, took the statement (exhibit No. 4) and assented to that as a credit. If that was the understanding of the parties, and it was agreed that it should be a payment and credit, which would be the same thing, and accepted as such, it would be a payment if there was nothing more in the case; that would make it a payment, although no money was passed. But the plaintiffs allege that, while all that might be true, this agreement contemplated that the property should be clear of encumbrances, and that

when they gave this exhibit, when it was handed over, it was with a misapprehension and in ignorance of the true facts.

It was not known by them that there were any encumbrances at all on the property, and afterwards they had to pay over $27,000, more than the amount of the check in suit; and I say to you if that is the case, if the credit was given on that paper in ignorance of the facts, without knowledge of them, it would not be a payment if the plaintiffs chose so to elect.

Well, if the court is not misunderstood, the last remarks bring us about to the end of the case, as far as the law is concerned.

If you believe the theory of the plaintiffs, as made out by the weight of the evidence, your verdict should be for them, unless one of the defenses has been made out on the part of the defendant, unless the defense set up by the defendant is made out. In other words, this burden is on the plaintiffs.

When a man brings a suit he must satisfy the jury, from the weight of the evidence, the strength, that there is more strength and power on his side than on the defendant's, to use a common expression. If he does not do that, he is not entitled to recover. If he does, he is entitled to a verdict.

On the other hand if you believe the defendant's theory, if you believe that the facts made out by it are correct; that there was no promise never to collect this check; that it was given for the benefit of Tintsman, and that the agreement was only to hold it for that purpose, the plaintiffs cannot recover; or if you believe there was an agreement, and Mr. Rafferty told the bank to go on and collect the check, the plaintiffs couldn't recover; or if you believe there was a payment of it under the statement of account by McClure & Company, exhibit No. 4, agreed to be a payment, to stand as a payment, the plaintiffs cannot recover. But if you believe that the statement was made out and the credit given under a misapprehension of the facts by the plaintiffs, in ignorance of them, and the plaintiffs found out afterwards they had to pay more than the amount of this check, or as much, it would not be a payment as between them; the plaintiffs could treat it either way, just as they chose.

So you have the whole matter before you now. The credibility of the witnesses is for you. These gentlemen have testified just directly opposite; there is no getting around that; but it does not follow that the witnesses on either side are intentionally testifying falsely. It does not follow that because people tes-

tify diametrically opposite they are telling falsehoods intentionally.

You have to do the best you can with the testimony; reconcile it where you can; take it all together and see whether the weight of it is on the side of the plaintiffs. If it is, and you find none of the defenses set up by the defendant correct, you give them a verdict. If you find it is not made out by the weight of the evidence, or that either of the defenses set up is made out, any one of them, your verdict should be for the defendant. That is entirely for you either way. If you find for the defendant, you merely say, For the defendant. If you find for the plaintiffs, you give them the amount of the check, with interest from the time it was paid.

(The court read and answered the points submitted, and concluded as follows):

Now you have the hardest work of the case in your hands, and that is to determine the facts. I hope I have made the propositions of law clear to you, and I believe you understand it. Take all the testimony, carefully consider it, and say whether the plaintiffs have satisfied you by the weight of the evidence of their case; and if they have, give them a verdict; and if they have not satisfied you, or the defendant has satisfied you of the truth of any one of its defenses, the verdict should be for it.

The jury returned a verdict for defendant, and plaintiffs took this writ, specifying errors as above noted.

*Welty McCullogh* and *D. T. Watson,* for plaintiffs in error.— The check was collected contrary to the agreement not to collect it. It does not make the slightest difference in the rights of these parties whether Tintsman made the promise that the check should not be collected, and the bank, knowing this, received and collected the check, or whether the bank itself made the promise. So long as any person took the check, with notice of the agreement, they stood in the shoes of Tintsman. Their rights were no higher or better. Fisher v. Leland, 4 Cush. 456, 50 Am. Dec. 805; Tagg v. Tennessee Nat. Bank, 9 Heisk, 479; Lime Rock Bank v. Hewett, 50 Me. 267; Bernhard v. Brunner, 4 Bosw. 528; Small v. Smith, 1 Denio, 583; Prall v. Hinchman, 6 Duer, 351; Bean v. Flint, 30 Me. 224; Knapp v. Lee, 3 Pick. 452; Bank of Tennessee v. Johnson, 1 Swan, 217, 55 Am.

Dec. 734; Vallett v. Parker, 6 Wend. 615; Beers v. Culver, 1 Hill, 589; Ocean Bank v. Dill, 39 Barb. 577.

There was no doubt about the notice to and knowledge of the Masonic Bank. McLean was its cashier, present at the time the check was loaned and agreement made. He was the executive officer of the bank, to whom notice should have been given. Ziegler v. First Nat. Bank, 93 Pa. 393; Bissell v. First Nat. Bank, 69 Pa. 415; Morse, Banks & Banking, pp. 12, 79, 81, 89, 90; Bank v. Irvine, 3 Penr. & W. 250; First Nat. Bank v. Graham, 85 Pa. 91, 27 Am. Rep. 628; Gray v. Portland Bank, 3 Mass. 385, 3 Am. Dec. 156; Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 645, 19 L. ed. 1018.

The recovery could be had, either under the *indebitatus assumpsit* count or on the count for money had and received. Pittsburgh & B. Coal, Coke & I. Co. v. Allegheny Nat. Bank, 34 Phila. Leg. Int. 313; Mathers v. Pearson, 13 Serg. & R. 258.

The count for money had and received lies wherever one man has money which in equity and good conscience belongs to another. Deysher v. Triebel, 64 Pa. 383; Smith v. Bellows, 77 Pa. 441.

It is an admitted rule of law that you cannot by cross-examination introduce the defense into the plaintiff's case. Breinig v. Meitzler, 23 Pa. 156; Helser v. McGrath, 52 Pa. 531; Jackson v. Litch, 62 Pa. 451.

*John Dalzell* and *Kennedy & Doty* for defendant in error.

PER CURIAM:

As there is nothing in this case that requires even a brief discussion, we dispose of it by saying that both law and facts were well disposed of in the court below.

The judgment is affirmed.