## 57265. FIRST NATIONAL BANK OF ATLANTA v. WYNNE et al.

QUILLIAN, Presiding Judge.

This is an appeal from the grant of partial summary judgment to the plaintiff Wynne on the issue of liability of the defendant First National Bank of Atlanta (bank).

Mrs. Wynne sold a tract of land to the Baier Corporation. The Baier Corporation subsequently transferred the property to Woods Mill, Ltd. The bank issued a "letter of credit" on behalf of Woods Mill to Mrs. Wynne which stated — in pertinent part:

"MRS. ORAEIUN M.
WYNNE May 2, 1975
2637 Peachtree Road, N. E.
Apt. 308
Atlanta, Georgia 30305 All documents must
 indicate Credit No. S-3753

Dear Mrs. Wynne,
 We hereby establish our Irrevocable Letter of Credit in your favor for the account of Woods Mill, Ltd., 2630 Equitable Building, Atlanta, Georgia, 30303, up to the aggregate amount of US $342,848.00 (THREE HUNDRED FORTY TWO THOUSAND, EIGHT HUNDRED FORTY EIGHT U. S. DOLLARS ONLY), available by your drafts drawn at sight on us marked Drawn Under The First National Bank of Atlanta Credit No. S-3753, and accompanied by the Documents specified below:
 1. Your signed statement that a default has occurred on note or security deed dated January 7, 1971.
*PARTIAL DRAWINGS PROHIBITED*
 We hereby undertake to honor all drafts drawn under and in compliance with the terms of this Credit, when accompanied by Documents as specified, if presented to us on or before August 4, 1975."

 Plaintiff alleged that because required substitute collateral was not tendered to her by Woods Mill, she forwarded the following letter to the bank:

"First National Bank of
Atlanta April 1, 1976
International Banking Department
First National Bank Building
Atlanta, Georgia 30303
 Re: Irrevocable Letter of Credit No. S-3753

Gentlemen:
 Attached is a sight draft in the amount of

$342,848.00, together with the original Irrevocable Letter of Credit No. S-3753, and letter of Amendment S-3753-F.

A default has occurred on the note or security deed dated January 7, 1971.

Yours very truly,
/s/ Mrs. Oraeiun Munn Wynne"

Included were, the original letter of credit, the amended letter of credit, which moved the date for presentation forward to April 2, 1976, and a draft, as follows:

"Drawn Under/Through Atlanta, Georgia, April 1, 1976

At xxxxxxxxx sight of this First Bill of Exchange (Second unpaid)

Pay to the Order of *ORAEIUN MUNN WYNNE* $342,848.00**

The Sum of: *THREE HUNDRED FORTY-TWO THOUSAND EIGHT HUNDRED FORTY-EIGHT AND NO/100————*

Value received and charge same to account of *WOODS MILL, LTD.*

To: *FIRST NATIONAL BANK OF ATLANTA (MAIN OFFICE)*

/s/MRS. ORAEIUN
MUNN WYNNE
/t/MRS. ORAEIUN
MUNN WYNNE"

Four days later, the bank returned all four documents to Mrs. Wynne without honoring the draft, stating: "We regret that we are unable to honor the enclosed sight draft (enclosure no. 3), since it does not strictly comply with the terms of the Letter of Credit (enclosure no. 1). We have an obligation to our customer to examine documents with care so as to ascertain that on their face they appear to comply with the terms of the credit. Since the enclosed documents on their face do not comply with the express terms of the credit, we have an obligation not to honor them." Plaintiff brought this action and both parties moved for summary judgment. The court granted plaintiff's motion for partial summary

judgment as to liability and denied the defendant's motion. Defendant appeals. *Held:*

1. A letter of credit transaction basically involves three contracts. The contract of sale between the buyer and seller. A contract between the buyer and a bank under which the bank issues the "letter of credit" on behalf of its customer — the buyer. The third contract is between the bank and the seller, the beneficiary of the letter of credit — in essence stating, upon presentation of the documentation required by the letter of credit I will honor your draft. However, with reference to the contract between the bank and its customer, the bank also contracts that it will "examine documents with care so as to ascertain that on their face they appear to comply with the terms of the [letter of] credit. . ." Code Ann. § 109A-5—109 (Ga. L. 1962, pp. 156, 314).

The beneficiary must comply with the terms of the letter of credit or there is no liability on the part of the issuer to honor his draft. Venizelos, S.A. v. Chase Manhattan Bank, 425 F2d 461 (2d Cir. 1970). There is a body of authority that the beneficiary "must meet the terms of the [letter of] credit — and precisely — if it is to exact performance of the issuer [bank]. Failing such compliance there can be no recovery from the drawee [bank]." Courtaulds North America, Inc. v. North Carolina National Bank, 528 F2d 802 (4th Cir. 1975). There is other authority that every variance is not fatal to the beneficiary. The court, in Flagship Cruises, Ltd. v. New England &c. Bank of Boston, 569 F2d 699 (1st Cir. 1978), held that "a variance between documents specified and documents submitted is not fatal if there is *no* possibility that the documents could mislead the paying bank to its detriment." See generally 35 ALR3d 1404.

The letter of credit in the instant case required two things be done: (1) a signed statement from the beneficiary that a default had occurred on the note or security deed given by their customer in purchase of the property, and (2) that both the statement and the draft indicate "Credit No. S-3753." The signed statement conformed to the requirements of the letter of credit. The draft did not indicate on its face that it was drawn in connection with "Credit No. S-3753." Is this deviation

fatal? We do not find it to be a material variance and affirm the trial court.

Although there is a considerable body of law requiring strict compliance with conditions of the letter of credit (Banco Espanol de Credito v. State Street Bank & Trust Co., 385 F2d 230, 234 (1st Cir. 1967)), other courts have held: "[W]e note some leaven in the loaf of strict construction. Not only does *haec verba* not control absolutely [cit.], but some courts now cast their eyes on a wider scene than a single document. We are mindful, also, of the admonition of several legal scholars that the integrity of international transactions (i.e., rigid adherence to material matters) must somehow strike a balance with the requirement of their fluidity (i.e., a reasonable flexibility as to ancillary matters) if the objective of increased dealings to the mutual satisfaction of all interested parties is to be enhanced." Banco Espanol de Credito v. State Street Bank & Trust Co., 385 F2d 230, 234, supra.

Anderson agrees and states that "[t]he Article on letters of credit is to be liberally interpreted. The requirement of rigid adherence to material matters must strike a balance with the concept of reasonable flexibility as to minor matters in order to facilitate trade." 3 Anderson, Uniform Commercial Code 350, § 5-101:3. Anderson also comments on the position of the issuer bank in dealing with this situation: "The duty resting on the issuer is one of exercising 'care' and this will undoubtedly be interpreted as meaning 'reasonable care under the circumstances' so that to some extent a deviation if permissible in the exercise of due care would not impose liability. A stronger argument in favor of the permissibility of some deviation is that it is recognized by the rules of the International Chamber of Commerce that the issuer may exercise discretion in a number of specific instances. It would therefore appear that authorization to the issuer to make customary deviations from instructions would be an implied term of the cus-tomer-issuer contract, particularly as long as the issuer exercised good faith and acted in a manner which was commercially reasonable. Under such circumstances, it is most unlikely that liability would be imposed upon

the issuer because of the consequence of deviation." 3 Anderson, Uniform Commercial Code 393, § 5-109:8. We note that this letter of credit has typed on the bottom that it is made subject to "The Uniform Customs and Practice for Documentary Credits (1962 Revision) International Chamber of Commerce, Brochure No. 222."

Letters of credit, being a contract, are subject to the same general principles that apply to other written contracts. Bank of North Carolina, N.A. v. The Rock Island Bank, 570 F2d 202 (7th Cir. 1978); 1 Anderson, Uniform Commercial Code 25, § 1-103:18. In Georgia our Code sets forth the criterion that there "must be a substantial compliance with the spirit, and not the letter only, of the contract . . ." Code Ann. § 20-1101. This court has interpreted this to mean "a substantial compliance with the terms of the agreement was all that was required of either of the parties." *Morgan v. Colt Co.,* 34 Ga. App. 630 (3) (130 SE 600); *Crooks v. Chapman Co.,* 124 Ga. App. 718 (3) (185 SE2d 787); *Elkins v. Willett Lincoln-Mercury, Inc.,* 141 Ga. App. 458, 459 (233 SE2d 851).

The facts of the instant case are strikingly similar to those of Flagship Cruises, Ltd. v. New England &c. Bank of Boston, 569 F2d 699, supra. Therein the letter of credit required "all drafts must be marked: *'Drawn under NEMNB Credit No. 18506'* . . . accompanied by 'your signed statement that *the draft* is in conjunction with Letter of Agreement dated May 23, 1972 and Addendum dated June 15, 1972.' " (Emphasis supplied.) The beneficiary presented a draft which referred only to "*No. 18506*" and the letter advised that the "*Letter of Credit* is in conjunction with our Letter of Agreement dated May 23, 1972, and Addendum dated June 15, 1972. . ." (Emphasis supplied.) The beneficiary also forwarded the original "Letter of Credit." The issuer refused to honor the draft and one of the reasons given was that the statement submitted did not conform to the letter of credit because it did not state that "*the draft* was in connection with the referenced agreement and addendum." (Emphasis supplied.) The court held that "if a draft must reveal its nexus to a specific agreement, this requirement would be satisfied if the entire letter of credit, on which the draft depends, relates to the specific agreement." Id. at 703. In

our case the reason given was that the draft did not contain the reference to "Credit No. S-3753." In our case the beneficiary also forwarded the original letter of credit — which refers to the draft, the identifying number and the additional statement. The beneficiary's covering statement also identified the draft, and the enclosed original letter of credit which completed the circle of information demanded. We agree with the Flagship statement that "[w]e do not see this kind of interpretation as relaxing the strict construction approach to letters of credit but rather as equating a literal requirement for its functional equal." Id. at 703. Accordingly, we hold that if from all the documents presented to the issuer by the beneficiary there is substantial compliance with the terms of the letter of credit *and* there is no possibility that the documents submitted could mislead the issuer to its detriment, there has been compliance with the letter of credit. Flagship Cruises, Ltd. v. New England &c. Bank of Boston, 569 F2d 699, 705, supra; Accord, Banco Espanol de Credito v. State Street Bank & Trust Co., 385 F2d 230, 237, supra, cert. den. 390 U.S. 1013; Venizelos, S.A. v. Chase Manhattan Bank, 425 F2d 461, supra.

We find the documents submitted by the beneficiary-plaintiff to the issuer defendant to be in compliance with the conditions of the letter of credit. The trial court did not err in granting partial summary judgment for plaintiff.

2. Pretermitting the issue of whether the denial of the defendant's motion for summary judgment is properly before us (See *Marietta Yamaha, Inc. v. Thomas,* 237 Ga. 840 (229 SE2d 753); but compare *Executive Jet Sales, Inc. v. Jet America, Inc.,* 242 Ga. 307 (248 SE2d 676)), as the grant of plaintiff's motion for partial summary judgment was not error, it was not error to deny defendant's motion for summary judgment.

3. The last issue presented by defendant is that he contends the trial court erred in retaining for trial plaintiff's prayer for expenses of litigation, including reasonable attorney fees.

Plaintiff relies upon Code Ann. § 20-1404 (Code § 20-1404) which allows expenses of litigation as a part of damages in instances where the defendant has acted in

bad faith, or has been stubbornly litigious, or caused the plaintiff unnecessary trouble and expense.

This court held in *Murphy v. Morse,* 96 Ga. App. 513, 516 (100 SE2d 623) that "[o]rdinarily it is a jury question as to whether a plaintiff is entitled to attorney's fees . . . [but] 'A mere refusal to pay a disputed claim is not the equivalent of stubborn litigiousness.' " There was a bona fide dispute here between the parties as to whether plaintiff's documents complied with the requirements of the letter of credit. There is no dispute as to the facts.

A refusal to pay in bad faith "means a frivolous and unfounded denial of liability. If there is any reasonable ground . . . to contest the claim, there is no bad faith" and it would be error for the court to permit the jury to return a verdict for penalties and attorney fees. *Dependable Ins. Co. v. Gibbs,* 218 Ga. 305, 316 (127 SE2d 454); *Belch v. Gulf Life Ins. Co.,* 219 Ga. 823, 828 (136 SE2d 351). A judgment would not be authorized if the payor "had reasonable and probable cause for making a defense to the claim." *Colonial Life &c. Ins. Co. v. McClain,* 243 Ga. 263; accord, *Interstate Life &c. Ins. Co. v. Williamson,* 220 Ga. 323 (138 SE2d 668).

A review of Shepard's Georgia citations reveal that this is a case of first impression in Georgia as Code Ann. § 109A-5—109, supra, has not been interpreted by a Georgia court. There was a variance between the requisites of the letter of credit and the documents submitted. Thus, as this was a case of first impression the bank "was legally justified in litigating the issue and cannot, as a matter of law, be liable for a statutory penalty for bad faith . . ." *State Farm &c. Ins. Co. v. Bass,* 231 Ga. 269 (201 SE2d 444).

We find neither of the three bases of Code Ann. § 20-1404 to exist under the facts of this case. The trial court erred in ruling that the plaintiff's claim for expenses of litigation, including reasonable attorney fees would be retained for trial. See *D. H. Overmyer Co. v. Nelson-Brantley Glass Co.,* 119 Ga. App. 599 (2) (168 SE2d 176).

*Judgment affirmed in part; reversed in part. Smith and Birdsong, JJ., concur.*

ARGUED FEBRUARY 8, 1979 — DECIDED APRIL 4, 1979 —
REHEARING DENIED MAY 8, 1979 — 

*Hansell, Post, Brandon & Dorsey, McChesney H.
Jeffries, Gary W. Hatch, Christopher L. Carson,* for
appellant.

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein,
George B. Haley, Thomas C. Harney, Mary Louise
Westmoreland, Lewis, Bynum & Kell, David F. Kell, Jr.,
Heyman & Sizemore, William H. Major, King & Spalding,
Ralph B. Levy, Joyce Bihary, James L. Paul,* for appellees.