849 F.2d 604
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Roy P. FISHER, Plaintiff-Appellant,
v.
PRUDENTIAL BANK & TRUST COMPANY, Defendant-Appellee.
 No. 87-1195.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 6, 1988.
Decided: June 3, 1988.
 
 Jerrold A. Thrope (Lawrence S. Greenwald, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, on brief), for appellant.
 Steven M. Collins (Alston & Bird; Benson Everett Legg, Venable, Baetjer & Howard, on brief), for appellee.
 Before HARRISON L. WINTER, Chief Judge, and K.K. HALL and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Ray P. Fisher instituted this diversity action against Prudential Bank & Trust Co. (Bank), claiming that Bank improperly charged him $201,374.92 for a payment Bank made to JVC Company of America (JVC). The Bank defended by stating that the payment was made pursuant to a letter of credit Bank issued at the instance of Fisher in favor of JVC. The district court determined that there was no genuine dispute as to the fact that the letter of credit was in effect when JVC called on it and that JVC was required to and did substantially comply with the presentation requirements of the letter of credit. The district court granted summary judgment for the Bank and Fisher appeals. We perceive no merit in Fisher's challenges to the correctness of the judgment, and we therefore affirm.
 
 I.
 
 2
 The district court found the following facts undisputed. On September 27, 1984, Fisher signed a $300,000 letter of credit agreement with Bank, naming JVC as beneficiary. Under its terms, if JVC properly called on the letter of credit for past-due debts, Fisher would be obliged to pay Bank an amount equal to JVC's presentation; if Fisher failed to deliver these funds, the Bank could liquidate a $300,000 certificate of deposit pledged by Fisher as collateral. When JVC subsequently notified Fisher of its intention to call on the letter of credit before its expiration date of September 26, 1985, Fisher sought an extension of the letter of credit in order to avoid JVC's imminent request for payment.
 
 
 3
 On September 19, 1985, while Fisher was vacationing in Utah, he placed a phone call to Bank requesting that the letter of credit and accompanying certificate of deposit be extended for thirty days. Bank employee John Parrott phoned Fisher's administrative assistant, Alison Richards-Strang, on September 23 and told her that Bank would need confirmation and acceptance of the extension directly from Fisher before it could act. When Fisher learned of Bank's request later that day, he had Richards-Strang read to him the terms of the extension while Bank employee Michael Walsh waited on hold on a separate telephone line to Richards-Strang. Richards-Strang then relayed to Bank Fisher's authorization for her to speak for him and his express approval of the extension's terms. On September 24, Parrott called Richards-Strang to confirm the Walsh-Fisher conversation and then mailed letters to JVC and Fisher confirming the extension.
 
 
 4
 After Fisher returned from vacation and received the Bank's letter of confirmation, he sent the Bank two notices stating that he never authorized the letter of credit's thirty-day extension. JVC called on the letter of credit on October 23, 1985, two days before its new expiration date, presenting documents that departed in minor respects from the letter of credit's requirements. The Bank paid JVC and liquidated Fisher's $300,000 certificate of deposit, forwarding to Fisher a check for the balance.
 
 II.
 
 5
 Fisher contends that he did not enter into a contract to extend the letter of credit agreement with the Bank before its first expiration date of September 26, 1985. He relies substantially on the Bank's unfortunate choice of words in an extension agreement it mailed to Fisher after orally confirming the extension:
 
 
 6
 Please sign the form of acceptance on the enclosed copy of this letter and return it to me within seven (7) days of the date of this letter [September 24, 1985], whereupon this letter shall become a binding agreement.
 
 
 7
 A. 93. The letter also included a line for Fisher's signature below the words "The foregoing agreement is hereby accepted."
 
 
 8
 However, the Bank's letter of September 24, 1985, also began with notification that the Bank had already extended the letter of credit "[a]s per your request." In light of the Bank's repeated oral confirmations of the agreement with Fisher through Fisher's administrative assistant, the Bank's September 24 letter may plausibly be interpreted as an attempt to memorialize in writing their oral agreement. Certainly, the district court's factual finding that Fisher had entered into a binding oral contract extending the letter of credit is not clearly erroneous.
 
 III.
 
 9
 The letter of credit stated that it was governed by the law of Georgia. The district court did not err as a matter of law in holding that the adequacy of documents presented by a beneficiary to an issuer must be judged by a substantial compliance standard under Georgia law. The Georgia legislature, in adopting the Uniform Commercial Code, has provided that:
 
 
 10
 An issuer must examine documents with care so as to ascertain that on their face they appear to comply with the terms of the [letter of] credit but unless otherwise agreed assumes no liability or responsibility for the genuineness, falsification or effect of any document which appears on such examination to be regular on its face.
 
 
 11
 Ga.Code Ann. Sec. 109A-5-109(2); UCC Sec. 5-109(2). Courts have disagreed as to whether documents presented by a beneficiary to an issuer should substantially or strictly comply with the letter of credit requirements. Compare Courtaulds North America, Inc. v. North Carolina National Bank, 528 F.2d 802, 805-06 (4 Cir.1975) (requiring strict compliance under North Carolina law), with Flagship Cruises, Ltd. v. New England Merchants National Bank of Boston, 569 F.2d 699, 705 (1 Cir.1978) (not every variance is fatal). A Georgia appellate court has construed Ga.Code Ann. Sec. 109A-5-109(2) as requiring only substantial compliance with the letter of credit's documentation requirements, First National Bank of Atlanta v. Wynne, 149 Ga.App. 811, 256 S.E.2d 383 (1979),[1] and we are not aware of any Georgia state court decisions after Wynne that depart from its substantial compliance test. We think Wynne the best available prediction of which standard Georgia's highest court would adopt, and accordingly we do not think the district court erred in ruling that Georgia law mandates a substantial compliance standard. Accord Pro-Fab, Inc. v. Vipa, Inc., 772 F.2d 847, 852-54 (11 Cir.1985) (applying Wynne as Georgia law).
 
 IV.
 
 12
 The district court did not clearly err in finding that JVC had substantially complied with the letter of credit presentation requirements. The errors in the draft and the submitted invoices were minor and did not raise the possibility that the issuer could be misled to its detriment.[2] The district court did not clearly err in finding that JVC fully complied with the letter of credit in other respects, submitting proper bills of lading, properly certifying signatures appearing on the bill of lading, and carefully reducing the sum total JVC requested on the letter of credit by $2,677.98 to account for an outstanding debt owed by JVC to UCV.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 The Wynne court held:
 [I]f from all the documents presented to the issuer by the beneficiary there is substantial compliance with the terms of the letter of credit and there is no possibility that the documents submitted could mislead the issuer to its detriment, there has been compliance with the letter of credit.
 
 
 [256]
 S.E.2d at 386-87 (emphasis in original). Contra Dynamics Corp. of America v. Citizens and Southern National Bank, 356 F.Supp. 991, 995 (N.D.Ga.1973) (pre-Wynne strict compliance)
 
 
 [2]
 The sight draft named the incorrect bank, although accompanying papers named the correct bank; the prose description of $201,374.92 on the sight draft omitted the word "seventy;" and the draft should have been dated October 23, 1985, not October 24, 1985. The invoices did not include serial numbers on them as required by the letter of credit but instead worksheets listing the serial numbers were stapled to the invoices. The invoices were addressed to "UCV Distributing, Inc." rather than "Universal Computer and Video Distributing, Inc. ('UVC')" [sic]