**FIRST STATE BANK & TRUST COMPANY OF VALDOSTA, GEORGIA, and Fidelity & Deposit Company of Maryland, Plaintiffs–Appellees,**

v.

**Bruce McIVER, Defendant–Appellant.**

**Nos. 88–8216, 88–8887.**

United States Court of Appeals, Eleventh Circuit.

Jan. 29, 1990.

Wilfred C. Varn, Ervin, Varn, Jacobs, Odom & Ervin, William E. Whitlock, III, Robert G. Gough, Robert M. Ervin, Jr., Tallahassee, Fla., for defendant-appellant.

Willis L. Miller, III, Barham, Elliott, Bennett, Miller, Stone & Cowart, Valdosta, Ga., for plaintiffs-appellees.

Before CLARK and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

CLARK, Circuit Judge:

This diversity action involves two consolidated appeals arising from orders granting summary judgment to plaintiffs and denying the defendant's Rule 60(b) motion for relief from judgment based on newly discovered evidence. We affirm.

## BACKGROUND

On July 1, 1977, defendant Bruce McIver executed and delivered a promissory note under seal in the amount of $100,000 to First State Bank and Trust Company of Valdosta, Georgia ("First Bank"). The principal amount of the note was due in full on June 1, 1978 and interest was to accrue at 10% per annum. As security for the note Mr. McIver obtained an irrevocable letter of credit issued by First Bank of Holmes County, Bonifay, Florida ("Holmes Bank"). The letter of credit provided that Holmes Bank would pay up to $100,000 to First Bank upon certification by First Bank that the note had become due and payable.

Mr. McIver defaulted on the note and on June 22, 1978, First Bank presented Holmes Bank with a sight draft on the letter of credit in the amount of $100,000 and a certificate stating that the note had become due and payable. Holmes Bank refused to honor the letter of credit, claiming that it was fraudulently issued by one of its officers, Gary Cooey. In August and November of 1978, Mr. McIver made interest payments of $10,000 and $1,000 to First Bank. In the twelve years since Mr. McIver first borrowed the $100,000, these are the only payments he has made on the note.

In 1979, First Bank filed suit in a Florida state court alleging that Holmes Bank had wrongfully dishonored the letter of credit. On April 10, 1981, First Bank and Holmes Bank entered into an agreement to settle the lawsuit (the "Settlement Agreement"). Pursuant to the terms of the Settlement Agreement, First Bank assigned the note to Holmes Bank and released Holmes Bank from all its claims under the letter of credit. In return, Holmes Bank paid First Bank $90,000 and agreed to pay to First

Bank one-half of all net proceeds collected, up to $43,000, under the note, the letter of credit, or any other source associated with the note or letter of credit. The Settlement Agreement recited that the $43,000 represented the difference between $90,000 and the sum of the principal, interest and attorney's fees due under the terms of the note at the time the Settlement Agreement was executed.

Four days later, Fidelity & Deposit Company of Maryland ("Fidelity") paid $90,000 to Holmes Bank pursuant to a fidelity bond that covered losses arising from bank officers' misconduct, and Holmes Bank assigned the note to Fidelity. Fidelity took the note subject to the Settlement Agreement terms requiring that First Bank receive one-half of all sums collected up to $43,000.

In October, 1981, Holmes Bank and Fidelity filed a civil action against Mr. Cooey in state court for fraudulently issuing the letter of credit, as well as other financial instruments.[1] The state court entered a default judgment against Cooey on April 12, 1982 in the amount of $15,888.06 for Holmes Bank and $410,656.65 for Fidelity.

Almost six years after Holmes assigned the note to Fidelity, in February of 1987, Fidelity assigned "an interest in the note consistent with the [Settlement Agreement]" back to First Bank for collection. On March 11, 1987, First Bank filed the present action against McIver seeking payment on the note. Fidelity was added as a plaintiff three months later. On December 30, 1987, Holmes Bank and Fidelity recorded a satisfaction of their state court judgment against Mr. Cooey. Mr. Cooey paid a total of $40,000 to Holmes Bank and Fidelity in exchange for the satisfaction of judgment.

Two months later, the district court granted First Bank's motion for summary judgment in the present case on the grounds that the note and the letter of credit were independent contracts, and thus any alleged breach by Holmes Bank in failing to pay on the letter of credit and instead purchasing the note from First Bank did not relieve Mr. McIver from his obligation to pay on the note. The district court entered judgment against Mr. McIver and in favor of First Bank and Fidelity for $198,739.68 plus interest from the date of judgment. *First State Bank & Trust Co. v. McIver*, 681 F.Supp. 1562 (M.D.Ga.1988).

After filing an appeal from the summary judgment order, Mr. McIver filed a motion in the district court pursuant to Rule 60(b), claiming that he had not been aware of the December, 1987 satisfaction of judgment between Holmes Bank, Fidelity and Mr. Cooey until after the district court had ruled on First Bank's motion for summary judgment. Mr. McIver claimed that this amounted to newly discovered evidence and that because he was a joint tortfeasor with Mr. Cooey with respect to the fraudulent issuance of the letter of credit, the satisfaction of judgment also released him from any liability to Fidelity on the note. The district court rejected these arguments and denied Mr. McIver's motion. *First State Bank & Trust Co. v. McIver*, 698 F.Supp. 232 (M.D.Ga.1988). In November, 1988, Mr. McIver filed a separate appeal from the court's ruling on the Rule 60(b) motion. That appeal was consolidated with the appeal from the entry of summary judgment.

## ANALYSIS

### I. Summary Judgment

■ On appeal from the district court's grant of summary judgment in favor of First Bank and Fidelity, Mr. McIver raises four alternative defenses to his liability on the note. The first three defenses are: 1) that the doctrine of election of remedies bars the plaintiffs from collecting on the note, because First Bank elected to pursue Holmes Bank on the letter of credit, rather than to pursue Mr. McIver, 2) that First Bank's entering into the Settlement Agreement with Holmes Bank discharged Mr.

---

1. Prior to the April, 1981 assignment of the note to Holmes Bank by First Bank, in July, 1978, Mr. Cooey had pled guilty to criminal charges of misapplying funds during his tenure as a Holmes Bank officer and had been sentenced to six months incarceration and four and a half years probation and had been ordered to make restitution in amounts totalling almost $123,000.

McIver's obligations on the note, and 3) that the assignment of the note to Holmes Bank was invalid because First Bank had no continuing interest in the note to assign after settling the letter of credit litigation with Holmes Bank. These defenses, however, simply amount to three different ways of articulating the same proposition, which is that the Settlement Agreement between First Bank and Holmes Bank effectively discharged Mr. McIver's obligation on the note. Mr. McIver's fourth defense is that even if the Settlement Agreement did not completely discharge his liability on the note, his liability is discharged to the extent of the $90,000 paid by Holmes Bank in settlement of First Bank's suit on the letter of credit.

We cannot agree that the Settlement Agreement effectively discharged Mr. McIver's obligation on the note in whole or in part. When Mr. McIver defaulted, First Bank had two options for recovering on the note. It could pursue Mr. McIver directly, or collect on the Holmes Bank letter of credit. When Holmes Bank refused to honor the letter of credit, and persisted in defending against First Bank's lawsuit, First Bank and Holmes entered into settlement negotiations. At that time a third option became available to First Bank, which was to sell the note to Holmes Bank. First Bank chose this third option, selling the note to Holmes Bank in return for $90,000 and one-half of all sums Holmes Bank was able to collect on the note, up to $43,000. The sale of a note, although it may provide the seller with sufficient funds to cover the debt, does not discharge the maker's obligation to pay the note according to its terms.[2] Therefore, First Bank's sale of the note to Holmes Bank in lieu of pursuing the letter of credit litigation further did not discharge Mr. McIver's obligation to pay the note.

The resolution of this case depends on the meaning given to the Settlement Agreement reached between First Bank and Holmes Bank. Unless the Settlement Agreement is ambiguous, its meaning is properly determined by the court, and does not become a jury issue. *Hardin v. Great Northern Nekoosa Corp.*, 237 Ga. 594, 229 S.E.2d 371 (1976); *Ogletree v. Jackson*, 184 Ga.App. 373, 361 S.E.2d 535 (1987). If we were to accept any of Mr. McIver's four defenses we would have to find that the Settlement Agreement operated contrary to its own terms. Mr. McIver insists throughout his brief that the $90,000 payment by Holmes Bank was required by the irrevocable letter of credit, and therefore that payment was a payment under the letter of credit which served to discharge the note in whole or in part. However, Paragraph 9 of the Settlement Agreement states: "By execution of this Agreement and consummation of this settlement, [Holmes Bank] does not admit that Gary Cooey had actual or apparent authority to execute the subject Letter of Credit and further does not admit the insufficiency of any of the affirmative defenses raised in its Answer and Defenses." R.O.A. Vol. 1, Tab 9. We agree with the district court that this language unambiguously shows that Holmes Bank was not paying under the letter of credit, but instead was paying to settle a lawsuit. We find no legal or equitable principle that requires us to impose a different meaning on the Settlement Agreement than that given to it by First Bank and Holmes Bank.[3]

2. *See* O.C.G.A. § 11–3–603 (Cum.Supp.1989) ("The liability of any party is discharged to the extent of *his* payment ... to the holder....") (emphasis added); O.C.G.A. § 11–3–413 (1982) ("The maker ... engages that *he* will pay the instrument according to its tenor....") (emphasis added).

3. As the district court explained, Holmes Bank's action in effectively purchasing the note from First Bank, rather than paying under the letter of credit may amount to a breach by Holmes Bank of its obligations to Mr. McIver under the letter of credit. *First State Bank & Trust Co. v.*

*McIver*, 681 F.Supp. 1562 (M.D.Ga.1988). It is well settled, however, that a letter of credit is separate and independent from the underlying contract. *See First National Bank of Atlanta v. Wynne*, 149 Ga.App. 811, 256 S.E.2d 383 (1979); *United States v. Sun Bank of Miami*, 609 F.2d 832 (5th Cir.1980); *see generally* J. White & R. Summers, Uniform Commercial Code 812–14 (3d ed. 1988). A breach by Holmes Bank under the letter of credit does not, therefore, have any effect upon the note. Any potential cause of action Mr. McIver may have against Holmes Bank for failure to fulfill its obligations under

First Bank's sale of the note to Holmes Bank did not amount to an election of remedies which would discharge the note. In support of his election of remedies argument Mr. McIver cites *St. Paul Fire and Marine Insurance Co. v. Michigan National Bank*, 660 F.2d 196 (6th Cir.1981). In *St. Paul*, a bank wrongfully dishonored a contractor's check to a subcontractor. The subcontractor then sued the contractor and the surety and obtained a default judgment against them. The parties subsequently entered into an agreement to set aside the default judgment, and the surety paid the full amount of the check to the subcontractor, and in return the subcontractor assigned to the surety his rights against the bank for the wrongful dishonor of the check. The court held that under Michigan law the subcontractor's receipt of full satisfaction for his injury by accepting the full amount of the check from the surety necessarily constituted an election of remedies. The court reasoned that to allow the surety to recover against the bank would in effect allow a double recovery for the single injury to the subcontractor. *Id.* at 199.

The present case is distinct. In *St. Paul* the subcontractor suffered two separate wrongs which resulted in a single injury. The contractor failed in his obligation to pay the subcontractor by giving him a bad check, and the bank failed to make a timely notification of the dishonor, but both of these wrongs resulted in a single injury, which was that the subcontractor was denied the amount of the check that was rightfully his. When the surety paid the amount of the check, the debt owed by the contractor was fully satisfied. Allowing the surety to sue the bank on the subcontractor's claim of wrongful dishonor would necessarily have allowed the subcontractor himself to have sued the bank after receiving the full amount of the check from the surety if he had not assigned that right of action to the surety. Thus, the subcontractor would be allowed to collect twice on the same debt.

In contrast, the only wrong suffered by First Bank was Mr. McIver's failure to pay the note. When the note became due, First Bank had the option of pursuing Mr. McIver, or of pursuing Holmes Bank on the letter of credit. Holmes Bank was not, like the bank was in *St. Paul*, responsible for the injury First Bank had incurred. Holmes Bank did not cause the note to become overdue, as the bank in *St. Paul* caused the subcontractor not to receive the payment he was due. When the surety in *St. Paul* paid the full amount of the check to the subcontractor, his injury was fully redressed. The injury in this case, the full payment of the note, has never been redressed. Mr. McIver has not fully paid his obligation under the note, and Holmes Bank did not pay the note on his behalf. The Settlement Agreement between First Bank and Holmes Bank makes clear that Holmes Bank denies any liability to First Bank on the letter of credit, and is not entering into the Settlement Agreement in fulfillment of any obligation evidenced by the letter of credit. The subsequent assignments of the note to Holmes Bank, Fidelity and back to First Bank do not change the fact that the overdue indebtedness has still not been satisfied.

Furthermore, the evidence does not reveal that the district court's ruling implicitly recognizes a right of double recovery for First Bank. Pursuant to the Settlement Agreement, First Bank received $90,000 and the right to one-half of any amounts that Holmes Bank, or Holmes Bank's successors and assigns, could collect on the note, up to $43,000. Holmes Bank assigned the note to Fidelity, and Fidelity assigned the note back to First Bank. These two assignments, however, were made subject to the terms of the Settlement Agreement. Thus, the judgment in favor of First Bank and Fidelity will be shared between them according to the terms of the Settlement Agreement. The first $86,000 of the judgment will be split evenly between First Bank and Fidelity, and the remainder will go to Fidelity. In the end, First Bank will have collected no

---

the letter of credit is separate and independent

from his liability on the note itself.

more than it was rightfully due under the terms of the note, and Mr. McIver will be required to pay no more than he originally obligated himself to pay when he executed the note.

Mr. McIver's fourth defense, that Holmes Bank's payment of $90,000 discharged the note *pro tanto*, is similarly unpersuasive because it also ignores the plain meaning of the Settlement Agreement. If the lawsuit between First Bank and Holmes Bank had proceeded to judgment, and the court had found that Holmes Bank was liable on the letter of credit, then any sums paid as a result of that judgment would serve to discharge the note *pro tanto*, as Holmes Bank would then be paying the sums on behalf of Mr. McIver as required by its contractual obligation to Mr. McIver under the letter of credit. However, the Settlement Agreement shows that Holmes Bank did not pay on behalf of Mr. McIver, and instead purchased the note from First Bank. Therefore, because Mr. McIver has presented no valid defense to his liability on the note, we affirm the district court's grant of summary judgment for the plaintiffs.

## II. Rule 60(b) Motion

 Mr. McIver contends that the district court erred in ruling that he was not a joint tortfeasor with Mr. Cooey such that the December, 1987 satisfaction of judgment serves to release him from any liability in the present litigation.[4] The December, 1987 satisfaction of judgment related to Mr. Cooey's liability to Holmes Bank for breaches of his duty relating to the wrongful issuance of the letter of credit. Assuming that Mr. McIver was jointly liable with Mr. Cooey for the wrongful issuance of the letter of credit, whether the satisfaction of judgment releases Mr. McIver of liability to Holmes Bank for his involvement in the issuance of the letter of credit is irrelevant to the present case.

---

**4.** Mr. McIver also contends the district court erred in ruling that his discovery of the satisfaction of judgment between Holmes Bank and Gary Cooey was not newly discovered evidence within the meaning of Rule 60(b). In light of

The present case involves a claim for payment of the overdue note. As explained above, Holmes Bank has never paid under the letter of credit, and instead purchased the note from First Bank to settle the lawsuit. Therefore, the rights which First Bank and Fidelity received in subsequent assignments of the note have nothing to do with the letter of credit and arise only from the terms of the note. First Bank and Fidelity do not claim that Holmes Bank assigned them its rights of action against Mr. McIver under the letter of credit. The judgment entered by the district court rests entirely on the rights of the parties arising from the note. Thus, any settlement of claims under the letter of credit has no effect on the district court's judgment, and the district court properly denied the Rule 60(b) motion.

AFFIRMED.

our conclusion that the district court correctly ruled that the settlement between Holmes Bank and Mr. Cooey has no effect on Mr. McIver's liability on the note, we need not decide whether the evidence was "newly discovered".