The decision of the Board of Immigration Appeals is AFFIRMED.

**BOARD OF TRADE OF SAN FRANCISCO, a corporation, as Assignee for the benefit of creditors of Antex Industries, Inc., a California Corporation, Plaintiff-Appellee,**

**and**

**Electronic Arrays, Inc., a California Corporation, Plaintiff in Intervention-Appellee,**

**v.**

**SWISS CREDIT BANK, an alien corporation, Defendant-Appellant.**

**No. 76–1895.**

United States Court of Appeals, Ninth Circuit.

Jan. 11, 1979.

Donald G. Parachini (argued), Cerf, Robinson & Leland, San Francisco, Cal., for defendant-appellant.

James H. Pooley (argued), of Wilson, Mosher & Sonsini, Palo Alto, Cal., for plaintiff-appellee.

Before WRIGHT, KENNEDY and TANG, Circuit Judges.

KENNEDY, Circuit Judge:

Swiss Credit Bank (Bank), the defendant below, appeals from the entry of summary judgment against it in the amount of $136,-000 for the alleged wrongful dishonor of its documentary letter of credit. The Bank argues that material issues of fact are presented by the case. We agree.

Antex Industries, Inc. (Antex), a California corporation, contracted to sell certain components for electronic calculators to the North American Foreign Trading Corporation (North American). North American, through a European financing agency, obtained a documentary letter of credit from the Bank, with Antex as the beneficiary. The Bank of America National Trust and Savings Association, San Francisco, acted as advising bank for the credit. Antex in turn assigned either the proceeds from the letter of credit or the letter of credit itself to its supplier, Electronic Arrays, Inc. (Arrays).

The letter of credit required the presentment of various documents including the following: "Full set clean on board bills of lading consigned to The Chase Manhattan Bank, Tokyo, for account of North American Foreign Trading Corporation, New York." The letter provided for partial shipments of the goods, with total credit in the amount of $312,000.

An initial shipment was made on April 3, 1974, and documents including an air waybill and a draft for $176,000 were presented and paid. When these documents were presented for the initial shipment, the advising bank questioned whether the air waybill presented constituted a full set clean on board bill of lading and requested instructions from the Bank. In particular, the concern was whether ocean shipment, rather than air shipment, was required. Bank authorized payment on the credit, but expressly stated to the advising bank that the terms of the credit were not amended.

The balance of the components were shipped by air on April 12 and 19. An air waybill and a draft for $136,000 were presented, but the Bank, through the advising bank, refused to honor the demand, stating that the bill of lading required by the letter of credit must be for ocean shipment.

Antex brought suit against the Bank for wrongful dishonor of the letter. Jurisdiction was based on diversity of citizenship and the amount in controversy. Arrays, claiming an interest in the proceeds, was granted leave to intervene. The Board of Trade of San Francisco (Board), assignee for the benefit of creditors of Antex, by stipulation was substituted as plaintiff. Board and Arrays moved for summary judgment against the Bank. That motion was granted from the bench, after the district judge found that no questions of fact were raised. No findings of fact or conclusions of law were given. For the reasons discussed below, we reverse.

■ Neither party has disputed that California law governs in this case. The Bank argues that under California law, the commercial meaning of "full set clean on board bills of lading" is a triable issue of fact, to be resolved both by the intent of the parties and the custom and usage in the trade. Bank offered the deposition of Edward Pugh, an officer of the advising bank in charge of letters of credit. He testified, as set forth more fully below, that custom and usage defined the term "full set clean on board bills of lading" to mean only ocean shipment. The Bank notes that strict compliance with the terms of a letter of credit is required. *See, e. g., Courtaulds North America, Inc. v. North Carolina National Bank*, 528 F.2d 802 (4th Cir. 1975) (where letter of credit calls for "100% acrylic yarn," an invoice for "imported acrylic yarn" and packing list stating "cartons marked:— 100% acrylic" stapled to the invoice was not a conforming tender); *Crocker First Nat. Bank v. De Sousa*, 27 F.2d 462 (9th Cir.),

**148**

*cert. denied*, 278 U.S. 650, 49 S.Ct. 94, 73 L.Ed. 561 (1928) (consular invoices for "white Java granulated sugar No. 24" and "white Java fine sugar No. 24" fatally defective where letter required "white Java refined granulated sugar" and "white Java refined fine granulated sugar.") In this case the shipment was by air, not ocean; and if the Bank's interpretation of the letter of credit is correct, the refusal to pay was not wrongful.

Arrays argues that the phrase in question is unambiguous and permits shipment by air, and that evidence of custom is not admissible to contradict the unambiguous terms of a written contract. It notes first that "bill of lading" is defined in Cal.Com. Code § 1201(6) and that under that definition "bills of lading" includes "airbills." It argues that since " 'all applicable laws in existence when an agreement is made necessarily enter into it and form a part of it as fully as if it were expressly referred to and incorporated in its terms'," *Mary Len Mine v. Industrial Accident Comm'n*, 64 Cal. App.2d 153, 159, 148 P.2d 106, 109 (1944), the statutory definition must be read into the contract. We think the argument is not well taken.

Although a number of terms are defined in section 1201, that section clearly states that the definitions are for the terms as used "*in this code.*" Therefore, while Arrays is correct that contracts will be deemed to incorporate all applicable laws, it has not pointed to any law which requires that parties use terms in contracts in precisely the same manner they are used in the statute. Many terms are defined throughout the California statutes, but they are there simply to make the statutes comprehensible. We know of no precedent for treating those definitions as a kind of state approved dictionary with an implicit mandate that in California these terms must always be used to mean what the state says they mean. In fact, the California Supreme Court has specifically rejected the theory that some words have immutable meaning that must be applied irrespective of the intent of the parties:

Some courts have expressed the opinion that contractual obligations are created by the mere use of certain words, whether or not there was any intention to incur such obligations. Under this view, contractual obligations flow, not from the intention of the parties but from the fact that they used certain magic words. Evidence of the parties' intention therefore becomes irrelevant.

In this state, however, the intention of the parties as expressed in the contract is the source of contractual rights and duties. A court must ascertain and give effect to this intention by determining what the parties meant by the words they used.

*Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 38, 69 Cal.Rptr. 561, 564, 442 P.2d 641, 644 (1968) (footnotes omitted).

Further, the code explicitly provides that "[t]erms . . . which are . . . set forth in a writing intended by the parties as a final expression of their agreement . . . may be explained or supplemented . . . [b]y course of dealing or usage of trade . . . or by course of performance . . . ." Cal.Com.Code § 2202. There is nothing to suggest that this rule applies to some but not all terms.

It must be remembered that the question in this case is not whether "bill of lading" is interchangeable with "air waybill." The question is the definition of the term "full set clean on board bills of lading." Mr. Pugh, an officer of the advising bank with twenty years experience in handling letters of credit and supporting documents, testified as follows:

[T]he letter of credit called for full set clean on board bills of lading, which is considered to be ocean shipments as we are never asked for clean on board bills of lading when it is either air or truck shipment. Clean on board normally refers to ocean shipment. I checked that with the head of the department, Mr. Artus, and he agreed that the sense of the credit was that it was to be an ocean shipment. That is why I considered that a discrep-

ancy and eventually cabled out for authority to pay.

In describing the operation of the California parole evidence rule, the California Supreme Court has stated:

> The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.

*Pacific Gas & Electric*, 69 Cal.2d at 37, 69 Cal.Rptr. at 564, 442 P.2d at 644. In this case, the interpretation of "clean on board bills of lading" suggested by the Bank cannot be said to be incorrect as a matter of law.[1] The Bank's evidence concerning usage of the trade was admissible and created a triable issue of fact as to the meaning intended by the parties for the phrase "full set clean on board bills of lading."

Arrays also contends that even if the letter of credit is ambiguous, any ambiguity should be construed against the issuer, citing *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 465–66 (2d Cir. 1970), and *Banco Espanol de Credito v. State Street Bank & Trust Co.*, 385 F.2d 230, 237 (1st Cir. 1967). The cases cited involved somewhat unusual circumstances and therefore may not support Arrays' contention that the claimed rule is always appropriate for the interpretation of letters of credit. We express no opinion on the question, because we conclude that even if the rule is applicable to letters of credit, it is premature to apply the rule in the context of this appeal. A trial is necessary to determine whether the ambiguity is real or imagined and, if an ambiguity exists, its extent. A rule for construing contracts against the author is not an alternative to construing the contract as the parties intended. It is to be applied after the court has inquired into the intent of the parties, and then only if its meaning remains uncertain.

The Bank argues that summary judgment was also inappropriate because there were triable issues as to whether the certificate of warranty that was presented to the Bank complied with the requirements of the letter of credit and whether, assuming an air waybill was permissible, the air waybill presented was inadequate because it had no notation indicating that the components were loaded on board. Arrays contends that the Bank failed to raise these points in opposing the motion for summary judgment and that therefore in examining the papers before it, the trial court could properly conclude that there is no issue of fact with respect to these questions. In view of our decision that summary judgment was improper for the reasons previously discussed, we need not decide whether it was inappropriate for other reasons as well.

Arrays further argues that the Bank is estopped to raise these two issues because it failed to make any objection on these grounds at the time it dishonored the letters of credit. *Barclays Bank D. C. O. v. Mercantile Nat'l Bank*, 481 F.2d 1224, 1236 (5th Cir. 1973), *cert. denied*, 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974). While there may be an estoppel, this involves questions of fact that must be decided by the trial court, and we express no opinion on it.

Finally, the Bank argues that summary judgment was improper because those claiming on the letter of credit must prove actual damages rather than the amount of the draft and the amount remaining on the credit. In view of our reversal of the summary judgment, we need not reach this issue.

REVERSED.

---

1. We note that *Black's Law Dictionary* (4th ed. rev. 1968) defined "bill of lading," as used in common law, as applying to goods sent by sea.