**H. RAY BAKER, INC., et al.,**
Plaintiff-Appellant,

v.

**ASSOCIATED BANKING CORP.,**
Defendant-Appellee.

No. 76–2917.

United States Court of Appeals,
Ninth Circuit.

March 5, 1979.

Joseph C. Barton (argued), of Barton & Stretch, San Francisco, Cal., for plaintiff-appellant.

David L. Kimport (argued), Baker & McKenzie, San Francisco, Cal., for defendant-appellee.

Before HUFSTEDLER and TANG, Circuit Judges, and SMITH,* District Judge.

TANG, Circuit Judge:

This is an action on an irrevocable letter of credit issued by the defendant, Associated Banking Corp. (ABC), a Philippine corporation, in favor of H. Ray Baker, Inc. (Baker) an Ohio corporation doing business in California, the proceeds of which were assigned to Interquip Corp. (Interquip), another Ohio corporation doing business in California. The district court dismissed for lack of jurisdiction over ABC. We affirm.

The facts are not disputed. Interquip negotiated with Dura-Tire and Rubber Industries, Inc. (Dura-Tire), a Philippine corporation, for the sale of equipment to Dura-Tire in the Philippines. All of these negotiations were conducted in San Francisco. Dura-Tire caused ABC to issue the irrevocable letter of credit for payment of the equipment. All negotiations between Dura-Tire and ABC were conducted in the Philippines.

The letter of credit originally called for a single shipment and payment in five installments, to be advised through Manufacturer's Hanover Trust Co. of New York. The letter was amended to permit partial shipments. The goods were shipped and the first installment paid by Manufacturer's Hanover Trust Co. Baker then assigned the proceeds of the letter of credit to Interquip and notified ABC of the assignment. Interquip presented the letter of credit for payment at a California bank. The letter was dishonored, purportedly because the equipment did not conform to contract terms.

ABC maintains correspondent banking relationships with six California banks; that is, ABC has non-interest bearing accounts with those banks for the purpose of processing letters of credit and facilitating the transfer of funds between California and the Philippines. ABC is not licensed to do business in California. It maintains no offices or employees or agents in California. Its sole contact with California is the maintenance of its accounts in the six California banks. Transactions regarding these accounts are handled by wire, telephone or mail. No agent or employee of ABC has ever visited California in connection with these accounts.

In a diversity action such as this, the court must perform a two-step jurisdictional analysis: does the state in which the court sits have a long-arm statute which confers jurisdiction, and if so, is that exercise of jurisdiction consistent with due process? Rule 4(e), F.R.Civ.Pro.; *Forsythe v. Overmyer*, 576 F.2d 779 (9th Cir. 1978) *cert. denied* —— U.S. ——, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978); *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977). The relevant state statute is Cal.Code Civ.Pro. § 410.10 [1] which has been interpreted to provide that the limits on the state court's jurisdiction are co-extensive with the outer limits of due process. The two-step analysis therefore collapses into a single inquiry as to what due process permits. *Forsythe, supra* at 782.

Under a line of cases beginning with *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), two types of jurisdiction over non-resident defendants have evolved.

The jurisdictional inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner* (1977) 433 U.S. 186, 204, 97 S.Ct. 2569,

---

* Honorable Russell E. Smith, Chief Judge for the District of Montana, sitting by designation.

1. Cal.Code of Civ.Pro. § 410.10 reads as follows:

A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.

2580, 53 L.Ed.2d 683. The defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95. The minimum contacts approach is based on a *quid pro quo* rationale. "[T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state," it is fair to require the defendant to respond. *Id.* at 319, 66 S.Ct. at 160.

■ If the defendant's forum-related activity is "substantial" or "continuous and systematic," the relationship between the defendant and the state is sufficient to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities. *Data Disc, Inc. v. Systems Technology Associates, Inc.,* (9th Cir. 1977) 557 F.2d 1280, 1287. This is sometimes referred to as general jurisdiction over the defendant.

■ If the defendant's contacts with the forum are insufficient to support general jurisdiction, jurisdiction may still lie if the nature and quality of those activities, considered in relation to the cause of action, make the assertion of jurisdiction fair and reasonable in the particular case. *Shaffer v. Heitner, supra,* 433 U.S. at 203–04, 97 S.Ct. 2569; *International Shoe v. Washington, supra,* 326 U.S. at 317–19, 66 S.Ct. 154. In making this evaluation, our Circuit uses the following approach:

'(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.'

*(Data Disc, Inc. v. Systems Technology Associates, Inc. supra,* 557 F.2d at 1287 (citations omitted).)

Applying these principles to the facts of this case, it is clear that, as ABC's contacts with California were neither substantial nor systematic, general jurisdiction over ABC is lacking.

■ Since the relationship between ABC and California is not strong enough to confer jurisdiction over ABC for all causes of action, we turn to the question whether the relationship among the defendant, the forum, and the litigation permits the assertion of limited jurisdiction in this case. The presence of assets in California is a relevant contact, though not one that is sufficient by itself to confer jurisdiction. *Shaffer v. Heitner, supra,* 433 U.S. 186, 97 S.Ct. 2569. ABC's deposits with the six California banks have a significance beyond the mere presence of funds, however, for they are one aspect of correspondent banking relationships undertaken by ABC for the express purpose of providing letter of credit services to the bank's Philippine clients in their business dealings with American entities. Thus ABC has purposefully invoked the protection of California law in order to reap the benefit of the very type of transaction sued on here. Moreover, the sales contract underlying the letter of credit and on which the dishonor apparently was based is thoroughly connected to California.

■ A letter of credit is an undertaking by the issuing bank, usually in the buyer's country, that it will pay a draft drawn on it by the seller upon presentation of specified documents, such as a bill of lading.[2] This permits the seller to substitute the credit of a bank with an established

**2.** For a more thorough discussion, *see* A. Davis, The Law Relating to Commercial Letters of Credit (3d ed. 1963); H. Gutteridge & M. Megrah, The Law of Bankers' Commercial Credits (4th ed. 1968); B. Kozolochyk, Commercial Letters of Credit in the Americas (1966); W. Ward & H. Harfield, Bank Credits and Acceptances (4th ed. 1958).

international reputation for that of a foreign buyer whose credit worthiness may not be known in the seller's country. The bank's obligation under the letter of credit is independent of the underlying sales contract. If the presented documents comply with the terms of the letter of credit, the bank is obligated to pay regardless of whether the goods themselves conform to the contractual terms. The issuing bank instructs its correspondent in the seller's country to "advise" the credit; that is, to notify the beneficiary of the existence and terms of the credit. The advising bank assumes no duty of payment unless it "confirms" the credit at the issuing bank's request, thereby becoming independently liable to the beneficiary. This letter of credit also designated the advising bank as the paying bank and authorized Manufacturers to reimburse any bank that negotiated the draft for the seller from ABC's account with Manufacturers.

The existence of correspondent relationships with the six California banks did not put those banks on any special footing with regard to this letter of credit. While Baker could have negotiated the letter of credit through any bank of its choice, any negotiating bank would have forwarded the draft to the paying bank in New York for reimbursement. A California correspondent would not have been authorized to accept the draft and pay it from ABC's account with that bank. From all that appears, this case is not analogous to products liability cases in which jurisdiction has been predicated on the fact that the defendant launched its defective product into the stream of commerce and therefore could foresee that it might be resold or transported into the forum state, there to injure the plaintiff. (E. g., *Jetco Elecontric Industries, Inc. v. Gardiner* (5th Cir. 1973) 473 F.2d 1228; *Andersen v. National Presto Industries, Inc.* (1965) 257 Iowa 911, 135 N.W.2d 639; *Gray v. American Radiator and Standard Sanitary Corp.* (1961) 22 Ill.2d 432, 176 N.E.2d 761; *see* Annot., 19 A.L. R.3d 13; Annot., 20 A.L.R.3d 957 (application to actions not based on products liability).) On the contrary, ABC's selection of a New York correspondent as the advising and paying bank confined the place of payment to New York, where the draft was later dishonored.

Although we recognize that evaluation of relevant contacts in this case must take into account the commercial realities of transactions involving international letters of credit, we think on this record that plaintiffs have failed to show that ABC could reasonably have expected the issuance or negotiation of this letter to have effects in California that would make it fair to require it to defend this suit there.

AFFIRMED.