The COLORADO NATIONAL BANK OF DENVER, a national banking association, Petitioner,

v.

BOARD OF COUNTY COMMISSIONERS OF ROUTT COUNTY, Colorado, Respondent.

No. 79SC389.

Supreme Court of Colorado, En Banc.

Aug. 31, 1981.

Rehearings Denied Oct. 5, 1981.

Davis, Graham & Stubbs, Randall Weeks, A. Bruce Campbell, Denver, for petitioner.

Hall & Evans, Robert S. Treece, Denver, Kendrick & Kendrick, Kristine Bradt Kendrick, Colorado Springs, Mattlage, Maus & Lettunich, Daniel Maus, Steamboat Springs, for respondent.

HODGES, Chief Justice.

We granted certiorari to review the court of appeals' decision affirming a district court's judgment holding the petitioner, the Colorado National Bank of Denver (the Bank), liable for the face amounts of three letters of credit it issued to secure the completion of road improvements by its customer, the Woodmoor Corporation (Woodmoor). *Board of County Commissioners of Routt County v. The Colorado National Bank of Denver*, Colo.App., 607 P.2d 1010 (1979). We reverse the judgment as to letters of credit No. 1156 and No. 1157, and affirm the judgment as to letter of credit No. 1168.

Woodmoor planned to develop a mountain recreation community in Routt County, Colorado (the County), to be known as Stagecoach. Early in 1973, Woodmoor obtained plat approval from the Routt County Board of County Commissioners (the Commissioners) for several Stagecoach subdivisions. Pursuant to section 30–28–137, C.R.S.1973 (1977 Repl. Vol. 12), and county subdivision regulations, approval of three of these subdivision plats was conditioned upon Woodmoor's agreement to provide a bond or other undertaking to ensure the completion of roads in accordance with the subdivision design specifications. Accordingly, subdivision improvements agreements were executed between Woodmoor and the County.

At Woodmoor's request, the Bank issued three letters of credit to secure Woodmoor's obligations under the agreements. The first two letters of credit, No. 1156 and No. 1157, were issued January 23, 1973 in the respective amounts of $158,773 and $77,330 bearing expiry dates of December 31, 1975. The third letter of credit No. 1168 was issued March 7, 1973 in the amount of $113,-732 bearing an expiry date of December 31, 1976. The face amounts of the letters of credit were identical to the estimated costs of the road and related improvements in the respective subdivision improvements agreements. The County was authorized by each letter of credit to draw directly on the Bank, for the account of Woodmoor, up to the face amount of each letter of credit. Each letter of credit required the County, in order to draw on the letters of credit, to submit fifteen-day sight drafts accompanied by:

> "A duly-signed statement by the Routt County Board of Commissioners that improvements have not been made in compliance with a Subdivision Improvements Agreement between Routt County and the Woodmoor Corporation dated [either January 9, 1973 or March 7, 1973] and covering the [respective subdivisions] at Stagecoach and that payment is therefore demanded hereunder."

Woodmoor never commenced construction of the roads and related improvements. On December 31, 1975, the expiry date of letters of credit No. 1156 and No. 1157, the County presented two demand drafts to the Bank for the face amounts of $158,773 and $77,330. The demand drafts were accompanied by a resolution of the Commissioners stating that Woodmoor had failed to comply with the terms of the subdivision improvements agreements and demanded payment of the face amounts of the letters of credit. On January 5, 1976, within three banking

days of the demand,[1] the Bank dishonored the drafts. The Bank did not specifically object to the County's presentation of demand drafts rather than fifteen-day sight drafts as required by the letters of credit.

On December 22, 1976, the County presented the Bank with a demand draft on letter of credit No. 1168 which was accompanied by the required resolution of the Commissioners. The Bank dishonored this draft because of the County's nonconforming demand, *viz.*, that a demand draft was submitted rather than a fifteen-day sight draft. On December 29, 1976, the County presented a fifteen-day sight draft to the Bank. This draft was not accompanied by the resolution of the Commissioners. On December 31, 1976, the Bank dishonored this draft.

The County sued to recover the face amounts of the three letters of credit plus interest from the dates of the demands. The Bank answered the County's complaints alleging several affirmative defenses. The fundamental premise of the Bank's defenses was the assertion that the County would receive a windfall since it had not expended or committed to spend any funds to complete the road improvements specified in the subdivision improvements agreements.

The County filed a motion in limine seeking a determination by the trial court to exclude evidence concerning matters beyond the four corners of the letters of credit and demands made on the letters of credit. The Bank replied by filing a cross-motion in limine seeking a ruling that it would not be precluded at trial from offering evidence outside the four corners of the letters of credit. The trial court, after extensive briefing by the parties and a hearing, granted the County's motion to limit the admissibility of evidence to the letters of credit, documents and drafts presented thereunder, the demands on the letters of credit, and the Bank's refusals to honor the County's demands for payment.

1. Under section 4–5–112(1)(a), C.R.S.1973, a bank called upon to honor drafts under a letter of credit may defer until the close of the third

The remaining issues were whether the County's demands conformed to the letters of credit or, if not, whether the Bank had waived nonconforming demands, and whether interest ought to be awarded. The parties agreed on a stipulated set of facts concerning these remaining issues. The Bank did, however, make an offer of proof as to the rejected affirmative defenses. The Bank would have attempted to prove that the subdivisions in question remained raw, undeveloped mountain property for which there was no viable market and that the County had neither constructed, made commitments to construct, nor planned to construct the roads or other improvements described in the subdivision improvements agreements secured by the letters of credit. These allegations were disputed by the County.

The trial court entered judgment against the Bank for the face amounts of the letters of credit plus accrued interest at the statutory rate from the date of the County's demands. Costs were awarded in favor of the County. The Bank's motion for new trial was denied, and the Bank appealed.

The court of appeals affirmed the judgment of the trial court ruling that standby letters of credit are governed by article 5 of the Uniform Commercial Code, section 4–5–101 *et seq.*, C.R.S.1973, and that an issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract. The court of appeals affirmed the trial court's refusal to consider any evidence regarding the County's alleged windfall. The court of appeals also held that any defects in the form of the County's demands were waived by the Bank.

I.

We first address the question whether the trial court properly limited the evidence to be presented at trial to the letters of

banking day following receipt of the documents.

credit, the demands by the County, and the Bank's replies to the demands. The Bank has continually asserted during each stage of this action that it ought to be permitted to show that the County will receive a windfall if the County is permitted to recover against the letters of credit. The Bank requested an opportunity to prove that the County will utilize the funds it would receive in a manner other than that specified in the road improvements agreements. Fundamentally, the Bank seeks to litigate the question of the completion of the purpose of the underlying performance agreements between Woodmoor and the County. This the Bank cannot do.

An overview of the history and law concerning letters of credit is useful in the consideration of this issue. The letter of credit arose to facilitate international commercial transactions involving the sale of goods. *E. g., H. Ray Baker, Inc. v. Associated Banking Corp.*, 592 F.2d 550 (9th Cir. 1979); Harfield, *Code Treatment of Letters of Credit*, 48 *Cornell L. Q.* 92 (1962); Note, *Letters of Credit: Injunction as a Remedy For Fraud in U.C.C. Section 5–114*, 63 *Minn. L.Rev.* 487 (1979); Annot., 35 A.L.R.3d 1404 (1978). Today the commercial utility of the letter of credit in both international and domestic sale of goods transactions is unquestioned and closely guarded. *E. g., East Girard Savings Ass'n v. Citizens National Bank*, 593 F.2d 598 (5th Cir. 1979); *Chase Manhattan Bank v. Equibank*, 550 F.2d 882 (3d Cir. 1977); *Association De Azucareros De Guatemala v. United States National Bank of Oregon*, 423 F.2d 638 (9th Cir. 1970); Harfield, *The Increasing Domestic Use of the Letter of Credit*, 4 *U.C.C.L.J.* 251 (1972); Verkuil, *Bank Solvency and Guaranty Letters of Credit*, 25 *Stan.L.Rev.* 716 (1973). In recent years, the use of the letter of credit has expanded to include guaranteeing or securing a bank's customer's promised performance to a third party in a variety of situations. *See First Empire Bank—New York v. Federal Deposit Insurance Corp.*, 572 F.2d 1361 (9th Cir.), *cert. denied* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978). This use is referred to as a standby letter of credit. Article five of the Uniform Commercial Code governs both traditional commercial letters of credit and standby letters of credit. *East Bank of Colorado Springs v. Dovenmuehle*, 196 Colo. 422, 589 P.2d 1361 (1978).

Three contractual relationships exist in a letter of credit transaction. *E. g., East Girard Savings Association v. Citizens National Bank, supra; Dynamics Corp. of America v. Citizens & Southern National Bank*, 356 F.Supp. 991 (N.D.Ga.1973); *First National Bank of Council Bluffs v. Rosebud Housing Authority*, Iowa, 291 N.W.2d 41 (1980); *Siderius, Inc. v. Wallace Co.*, 583 S.W.2d 852 (Tex.Civ.App. 1979); Justice, *Letters of Credit: Expectations and Frustrations*, 94 *Banking L. J.* 424 (1977); Verkuil, *Bank Solvency and Guaranty Letters of Credit, supra*. Underlying the letter of credit transaction is the contract between the bank's customer and the beneficiary of the letter of credit, which consists of the business agreement between these parties. Then there is the contractual arrangement between the bank and its customer whereby the bank agrees to issue the letter of credit, and the customer agrees to repay the bank for the amounts paid under the letter of credit. *See also* section 4–5–114(3), C.R.S. 1973. Finally, there is the contractual relationship between the bank and the beneficiary of the letter of credit created by the letter of credit itself. The bank agrees to honor the beneficiary's drafts or demands for payment which conform to the terms of the letter of credit. *See generally* sections 4–5–103(1)(a) and 4–5–114(1), C.R.S. 1973; *White and Summers, Uniform Commercial Code* § 18–6 (2d Ed. 1980).

■ It is fundamental that the letter of credit is separate and independent from the underlying business transaction between the bank's customer and the beneficiary of the letter of credit. *East Girard Savings Association v. Citizens National Bank, supra; West Virginia Housing Development Fund v. Sroka*, 415 F.Supp. 1107 (W.D.Pa. 1976); *East Bank of Colorado Springs v. Dovenmuehle, supra; First National Bank of Council Bluffs v. Rosebud Housing Authority, supra; Sztejn v. J. Henry Schroder*

*Banking Corp.*, 177 Misc. 719, 31 N.Y.S.2d 631 (Sup.Ct. 1941); *Intraworld Industries, Inc. v. Girard Trust Bank*, 461 Pa. 343, 336 A.2d 316 (1975); *Siderius, Inc. v. Wallace, supra*; Arnold & Bransilver, *The Standby Letter of Credit—The Controversy Continues*, 10 U.C.C.L.J. 272 (1978); Verkuil, *Bank Solvency and Guaranty Letters of Credit, supra*; Note *Letters of Credit: Injunction as a Remedy For Fraud in U.C.C. Section 5–114, supra*; Annot. 35 A.L.R.3d 1404 (1971). "The letter of credit is essentially a contract between the issuer and the beneficiary and is recognized by [article 5 of the Uniform Commercial Code] as independent of the underlying contract between the customer and the beneficiary. . . . In view of this independent nature of the letter of credit engagement the issuer is under a duty to honor the drafts for payment which in fact conform with the terms of the credit without reference to their compliance with the terms of the underlying contract." Section 4–5–114, Official Comment 1, C.R.S. 1973.

The independence of the letter of credit from the underlying contract has been called the key to the commercial vitality of the letter of credit. *See, e. g., United States v. Sun Bank of Miami*, 609 F.2d 832 (5th Cir. 1980); *Pringle-Associated Mortgage Corp. v. Southern National Bank of Hattiesburg*, 571 F.2d 871 (5th Cir. 1978). The bank must honor drafts or demands for payment under the letter of credit when the documents required by the letter of credit appear on their face to comply with the terms of the credit. Section 4–5–114(2), C.R.S. 1973. An exception to the bank's obligation to honor an apparently conforming draft or demand for payment, *see Foreign Venture Ltd. Partnership v. Chemical Bank*, 59 App.Div.2d 352, 399 N.Y.S.2d 114 (1977), is when a required document is, *inter alia*, forged or fraudulent, or there is fraud in the transaction. Section 4–5–114(2). The application of this narrow exception is discussed in detail later in this opinion.

As mentioned above, letters of credit have recently come to be used to secure a bank's customer's performance to a third party. When a letter of credit is used to secure a bank's customer's promised performance to a third party, in whatever capacity that might be, the letter of credit is referred to as a "guaranty letter of credit," *see East Bank of Colorado Springs v. Dovenmuehle, supra*; Verkuil, *Bank Solvency and Guaranty Letters of Credit, supra*, or a "standby letter of credit," Arnold & Bransilver, *The Standby Letter of Credit—The Controversy Continues, supra*, 12 C.F.R. § 7.1160 (1980). Standby letters of credit are closely akin to a suretyship·or guaranty contract. The bank promises to pay when there is a default on an obligation by the bank's customer. "If for any reason performance is not made, or is made defectively, the bank is liable without regard to the underlying rights of the contracting parties." Verkuil, *Bank Solvency and Guaranty Letters of Credit, supra* at 723.

While banks cannot, as a general rule, act as a surety or guarantor of another party's agreed performance, *see generally* Lord, *The No-Guaranty Rule and the Standby Letter of Credit Controversy*, 96 *Banking L. J.* 46 (1979), the legality of standby letters of credit has been uniformly recognized. *E. g., United Bank of Denver v. Quadrangle, Ltd.*, 42 Colo.App. 486, 596 P.2d 408 (1979). What distinguishes a standby letter of credit from a suretyship or guaranty contract is that the bank's liability rests upon the letter of credit contract rather than upon the underlying performance contract between the bank customer and the beneficiary of the letter of credit. *E. g., Barclays Bank D.C.O. v. Mercantile National Bank*, 481 F.2d 1224 (5th Cir. 1973), *cert. dismissed* 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974); *Association De Azucareros De Guatemala v. United States National Bank of Oregon, supra; First National Bank of Council Bluffs v. Rosebud Housing Authority, supra; Republic National Bank of Dallas v. Northwest National Bank of Fort Worth*, 578 S.W.2d 109 (Tex.1978); Arnold & Bransilver, *The Standby Letter of Credit—The Controversy Continues, supra*; Harfield, *Code Treatment of Letters of Credit, supra*; Squillante, *Letter of Credit: A Discourse*, 85 *Comm. L. J.* 220 (1980);

Verkuil, *Bank Solvency and Guaranty Letters of Credit, supra.*

The utilization by banks of standby letters of credit is now wide-spread, although some commentators suggest that bankers may not appreciate the legal obligations imposed by the standby letter of credit. Where the bank issues a standby letter of credit, the bank naturally expects that the credit will not be drawn on in the normal course of events, *i. e.,* if the customer of the bank fulfills its agreed-upon performance, then the credit will not be drawn upon. This expectation of the bank must be compared to the bank's expectation with respect to a traditional letter of credit issued as a means of financing a sale of goods. In the latter situation, the bank expects that the credit will always be drawn upon. *See* Arnold & Bransilver, *The Standby Letter of Credit—The Controversy Continues, supra;* Note, *Letters of Credit: Injunction As a Remedy For Fraud In U.C.C. Section 5–114, supra.* It has been suggested that bankers may be lax in considering the credit of a customer with respect to issuing a standby letter of credit to secure the integrity of its customer to complete an agreed-upon performance, since it could be easily assumed by the bank that demand for payment would never be made. *See* Harfield, *The Increasing Domestic Use of the Letter of Credit, supra* at 258–59. *See also,* Note, *Guaranty Letters of Credit: Problems and Possibilities,* 16 *Ariz.L.Rev.* 823, 832 (1974). One solution suggested by many commentators is that the issuing bank treat a standby letter of credit like an unsecured loan. Harfield, *Increasing Domestic Use of the Letter of Credit, supra;* Verkuil, *Bank Solvency and Guaranty Letters of Credit, supra;* Note: *Guaranty Letter of Credit: Problems and Possibilities, supra.* National Banks issuing standby letters of credit are subject to the lending limits of 12 U.S.C. § 84 (1976).[2]

We now turn to a discussion of the present case, and why the Bank cannot introduce evidence beyond that directly relating to its contract with the County. As discussed above, the letters of credit, and the Bank's obligations thereunder, are separate and independent from the underlying subdivision improvements agreements between Woodmoor and the County. The fact that the letters of credit issued by the Bank are standby letters of credit does not alter this general rule. The Bank is bound by its own contracts with the County.

Each of the letters of credit prepared and issued by the Bank in this case sets forth specifically the condition for payment, *i. e.,* that Woodmoor failed to make the improvements in conformance with the respective subdivision improvements agreements. Had the Bank desired additional conditions for payment, such as the actual completion of the road improvements prior to payment under the letters of credit, it could have incorporated such a condition in the letters of credit. *Accord, East Bank of Colorado Springs v. Dovenmuehle, supra. See generally Pringle-Associated Mortgage Corp. v. Southern National Bank of Hattiesburg, supra.* To demand payment under the letters of credit, the County was only required to submit a "duly-designed statement by the [Commissioners] that improvements have not been made in compliance with [the] Subdivision Improvements Agreement[s]...."

The Bank cannot litigate the performance of the underlying performance contracts. "[P]erformance of the underlying contract is irrelevant to the Bank's obligations under the letter of credit." *West Virginia Housing Development Fund v. Sroka, supra* at 1114 (W.D.Pa.1976). *See also East Girard Savings Association v. Citizens National Bank, supra; Pastor v. Na-*

---

2. 12 U.S.C. § 84 (1976) provides that a national bank may not lend more than ten percent of its capital funds to any one customer. Traditionally, standby letters of credit did not fall within the aegis of this statute as they were considered contingent liabilities, and thus not reflected in a bank's balance sheet; however, the modern view, as codified in 12 C.F.R. § 7.1160 (1981), is that letters of credit are actual liabilities of a bank which must be included when calculating the marginal reserve required under this statutory provision. *See* Verkuil, *Bank Solvency and Guaranty Letters of Credit, supra.*

*tional Republic Bank of Chicago*, 76 Ill.2d 139, 28 Ill.Dec. 535, 390 N.E.2d 894 (1979); *First National Bank of Council Bluffs v. Rosebud Housing Authority, supra.* Likewise, the question of whether the beneficiary of the letter of credit has suffered any damage by the failure of the bank's customer to perform as agreed is of no concern. *Mid-States Mortgage Corp. v. National Bank of Southfield*, 77 Mich.App. 651, 259 N.W.2d 175 (1977). Further, a bank cannot challenge the utilization of funds paid under a letter of credit. *Bossier Bank & Trust Co. v. Union Planters Bank*, 550 F.2d 1077 (6th Cir. 1977); *Werner v. A. L. Grootemaat & Sons, Inc.*, 80 Wis.2d 513, 259 N.W.2d 310 (1977).

The Bank argues that it is entitled to dishonor the County's drafts under section 4–5–114(2), C.R.S. 1973. This section provides:

"Unless otherwise agreed, when documents appear on their face to comply with the terms of a credit but a required document . . . is forged or fraudulent or there is fraud in the transaction:

. . . .

(a) The issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course . . . and in an appropriate case would make it a person to whom a document of title has been duly negotiated . . . or a bona fide purchaser of a security . . . ; and

(b) In all other cases, as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery, or other defect not apparent on the face of the documents; but a court of appropriate jurisdiction may enjoin such honor."

Under this section, the issuer of a letter of credit may in good faith honor a draft or demand for payment notwithstanding notice from its customer that documents are forged, or fraudulent, or there is fraud in the transaction. The issuer may, however, be enjoined from honoring such drafts or demands for payment. Impliedly, the issuer may also refuse to honor such drafts or demands for payment when it has been notified by its customer of these defects. Section 4–5–114, Official Comment 2, C.R.S. 1973; *Siderius, Inc. v. Wallace, supra.*

In this case, the Bank has not argued, nor can it reasonably assert, that the documents presented by the County are forged or fraudulent. The Bank has not challenged the authenticity of the drafts and demands for payment by the County or the truthfulness of the statements that the requirements of the underlying subdivision improvements agreements have not been fulfilled. The Bank does assert, however, that there has been fraud in the transaction on the basis that the funds the County would receive would be utilized by the County other than to pay for the completion of the road improvements.

Fundamentally, "fraud in the transaction," as referred to in section 4–5–114(2), must stem from conduct by the beneficiary of the letter of credit as against the customer of the bank. *See generally White and Summers, Uniform Commercial Code* § 18–6 (2d ed. 1980). It must be of such an egregious nature as to vitiate the entire underlying transaction so that the legitimate purposes of the independence of the bank's obligation would no longer be served. *Intraworld Industries, Inc. v. Girard Trust Co., supra; New York Life Insurance Co. v. Hartford National Bank & Trust Co.*, 173 Conn. 492, 378 A.2d 562 (1977); *Sztejn v. Henry Schroder Banking Corp., supra; Werner v. A. L. Grootemaat & Sons, Inc., supra.* "[I]t is generally thought to include an element of intentional misrepresentation in order to profit from another. . . ." *West Virginia Housing Development Fund v. Sroka, supra.* This fraud is manifested in the documents themselves, and the statements therein, presented under the letter of credit. *Dynamics Corporation of America v. Citizens & Southern National Bank, supra; Shaffer v. Brooklyn Park Garden Apartments*, 311 Minn. 452,

250 N.W.2d 172 (1977). *See generally* Harfield, *Enjoining Letter of Credit Transactions*, 95 *Banking L. J.* 596 (1978); Verkuil, *Bank Solvency and Guaranty Letters of Credit, supra.* One court has gone so far as to say that only some defect in these documents would justify a bank's dishonor. *O'Grady v. First Union National Bank of North Carolina*, 296 N.C. 212, 250 S.E.2d 587 (1978).

■ In this case, the Bank has not asserted that there is fraud in the transaction between Woodmoor and the County, nor can it reasonably make such an argument. No facts have been pled to establish fraud which vitiated the entire agreement between the County and Woodmoor. No fraud has been asserted by the Bank's offer of proof which would entitle it to dishonor the County's drafts and demands for payment. *See West Virginia Housing Development Fund v. Sroka, supra; Mid-States Mortgage v. National Bank of Southfield, supra.* Thus, the trial court properly granted the County's motion in limine excluding all evidence beyond the four corners of the letters of credit, the demands thereunder, and the Bank's replies.

## II.

We next consider whether the drafts and demands for payment by the County complied with the terms of the letters of credit, or if not, whether the Bank waived any nonconforming demands.

■ The Bank was obligated to examine the documents "with care so as to ascertain that on their face they appear[ed] to comply with the terms of the credit...." Section 4–5–109(2), C.R.S. 1973. To maintain the commercial vitality of the letter of credit device, strict compliance with the terms of the letter of credit is required. *E. g., Board of Trade of San Francisco v. Swiss Credit Bank*, 597 F.2d 146 (9th Cir. 1979); *Chase Manhattan Bank v. Equibank, supra; United Technologies Corp. v. Citibank N.A.*, 469 F.Supp. 473 (S.D.N.Y. 1979); *Fidelity National Bank of South Miami v. Dade County*, 371 So.2d 545 (Fla.App. 1979); *First National Bank of Council Bluffs v. Rosebud Housing Authority, supra; Bounty Trading Corp. v. S.E.K. Sportswear, Ltd.*, 48 App.

Div.2d 811, 370 N.Y.S.2d 4 (1975). If the drafts or demands for payment on their face complied with the terms of the letters of credit, the Bank was obligated to honor the drafts. Section 4–5–114(1), C.R.S. 1973. *See also, e. g.*, Annot., 35 A.L.R.3d 1404 (1971).

In this case, the Bank promised to pay the County, for the account of Woodmoor, upon the County's presentation of fifteen-day sight drafts accompanied by a "duly signed statement by the Routt County Board of Commissioners that improvements have not been made in compliance with [the respective Subdivision Improvements Agreements.]" In order to determine whether the County's drafts and demands for payment complied with the terms of the letters of credit, we must analyze the drafts on the first two letters of credit numbers 1156 and 1157 separately from the drafts on the third letter of credit number 1168.

Letters of credit No. 1156 and 1157 bore expiry dates of December 31, 1975. On that date, the County presented two demand drafts to the Bank in the full face amounts of the respective letters of credit. The drafts were accompanied by, as required by the letters of credit, a resolution of the Commissioners stating that Woodmoor failed to comply with the terms of the underlying subdivision improvements agreements and demanded payment under the terms of the respective letters of credit. On January 5, 1976, within three banking days of the demand, the Bank dishonored the drafts. The Bank did not object to the County's presentation of demand drafts as opposed to fifteen-date sight drafts.

A demand draft is not the same as a fifteen-day sight draft. A fifteen-day sight draft provides the issuer an additional period of time not conferred by a demand instrument to examine the draft and determine whether the conditions of payment, if any, have been fulfilled. Thus, the County's demand did not strictly conform to the terms of the letters of credit. *Accord, Bounty Trading Corp. v. S.E.K. Sportswear, Ltd., supra.*

■ The Bank did not, however, object to the form of the demands by the County.

As a general rule, when an issuer of a letter of credit formally places its refusal to pay upon specified grounds, it is held to have waived all other grounds for dishonor. *Barclays Bank D.C.O. v. Mercantile National Bank, supra; East Bank of Colorado Springs v. Dovenmuehle, supra; Siderius, Inc. v. Wallace Co., supra.* "However, the application of the rule confining an issuer to its stated grounds for dishonor is limited to situations where the statements have misled the beneficiary who could have cured the defect but relied on the stated grounds to its injury . . . ." *Siderius, Inc. v. Wallace Co., supra* at 862. *See also Corporacion De Mercadeo Agricola v. Mellon Bank*, 608 F.2d 43 (2d Cir. 1979); *Flagship Cruises, Ltd. v. New England Merchants National Bank of Boston*, 569 F.2d 699 (1st Cir. 1978); *Barclays Bank, D.C.O. v. Mercantile National Bank, supra; East Bank of Colorado Springs v. Dovenmuehle, supra.*

 In this case, the County did not present its drafts and demands for payment on the letters of credit until the final day of their vitality. The Bank then had three banking days before it was required to honor or dishonor the drafts and demands for payment. Within this period the Bank dishonored the drafts. The County could not have cured the defect since the presentment would have then been untimely. *See generally United Technologies Corp. v. Citibank, N.A., supra; Hyland Hills Metropolitan Park and Recreation District v. McCoy Enterprises, Inc.*, 38 Colo.App. 23, 554 P.2d 708 (1976). Consequently, the County did not detrimentally rely on the Bank's failure to state as one ground for its dishonor of the drafts that the County presented demand instruments rather than fifteen-day sight drafts. Accordingly, since the County could not have cured its nonconforming demand, we therefore hold that the Bank did not waive its objections to the County's nonconforming demands on letter of credit numbers 1156 and 1157.[3] Therefore, the Bank is not liable on these letters of credit.

Letter of credit number 1168 bore an expiry date of December 31, 1976. On December 22, 1976, the County presented the Bank with a demand draft on this letter of credit accompanied by a resolution by the Commissioners that Woodmoor had not fulfilled its obligations on the underlying subdivision improvements agreement. The Bank timely dishonored this draft on the basis, *inter alia*, that the County submitted a demand draft rather than a fifteen-day sight draft. The County cured this defect by presenting a fifteen-day sight draft to the Bank on December 29, 1976. This fifteen-day sight draft was not accompanied

**3.** The County also asserts that long before the expiry dates of the letters of credit the Bank notified the County that the Bank would only honor drafts for amounts the County had actually expended on improvements before the expiry dates of the letters of credit. The County argues that the Bank anticipatorily repudiated its obligations under the letters of credit and consequently waived subsequent nonconforming demands by the County.

The sole substantiation in the record before us for this allegation of fact is contained in the Defendant's [Bank's] response to Plaintiff's [County's] request for production of documents and interrogatories, signed by one vice president of the Bank:

"Interrogatory # 3. Please state in what way you believe that the plaintiff has waived any rights it may have to assert any claim against you under letters of credit numbered 1156 and/or 1157.

Answer: . . . The Bank notified the Board well in advance of the expiry dates of the letters of credit of the Bank's position that it should make payments under the letters of credit only prior to their expiry date and only as the Board incurred or committed to incur expenses for the particular improvements called for in the Subdivision Improvements Agreements. . . ."

No other portion of the record substantiates or clarifies this statement. Nor do the parties' stipulated facts refer to this question of fact. We cannot conclude from this answer to the County's interrogatories that the Bank anticipatorily repudiated its obligation to honor drafts under letter of credit numbers 1156 and 1157. The Bank merely indicated that it *should* not be required to honor drafts unless the County had incurred or committed to incur expenses to complete the road improvements not that it *would* not honor the County's drafts unless this condition had been met. "[A]nticipatory repudiation centers upon an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance." Section 4–2–610, Comment 1, C.R.S. 1973.

by the required resolution of the Commissioners. On December 31, 1976, the Bank sent the County a letter notifying the County that this draft had also been dishonored.

■ The same rules of strict compliance discussed above must be applied to determine whether the County's drafts and demands for payment complied with the terms of letter of credit number 1168. The County's first draft on letter of credit number 1168 was nonconforming, since it was submitted as a demand instrument rather than a fifteen-day sight draft. On December 29, 1976, the County presented a fifteen-day sight draft which cured this defect. While the County failed to attach the required statement and demand for payment by the Commissioners with the fifteen-day sight draft, it was not required to do so. The County was merely curing a prior nonconforming demand. The two demands, taken together, consequently strictly complied with the terms of the letter of credit. The Bank therefore wrongfully dishonored this draft and demand for payment.

We reverse the judgment as to letters of credit No. 1156 and No. 1157, and affirm the judgment as to letter of credit No. 1168. This case is returned to the court of appeals for remand to the trial court for the entry of judgment in consonance with the views expressed in this opinion.

ROVIRA and LOHR, JJ., concur in part and dissent in part.

LOHR, Justice, concurring in part and dissenting in part.

I concur in part I of the majority opinion and in that portion of part II which treats letter of credit number 1168 and affirms the court of appeals' opinion upholding the district court's judgment against the Colorado National Bank of Denver (Bank) on that letter of credit. I dissent to that portion of part II which reverses the judgment against the Bank on letters of credit numbers 1156 and 1157. I would affirm the decision of the court of appeals in its entirety.

The majority finds that the Bank justifiably dishonored letters of credit numbers 1156 and 1157 because the draft presented by Routt County (County) did not strictly comply with the terms of the credit. *See* section 4–5–114(1), C.R.S. 1973. Because I conclude that this was an improper application of the rule of strict compliance to a non-material term of the letters of credit, I respectfully dissent.

As the majority indicates, the prevailing rule requires strict compliance with the terms of a letter of credit. *E.g., Board of Trade of San Francisco v. Swiss Credit Bank*, 597 F.2d 146 (9th Cir. 1979); *Chase Manhattan Bank v. Equibank*, 550 F.2d 882 (3rd Cir. 1977); *Courtaulds North America, Inc. v. North Carolina National Bank*, 528 F.2d 802 (4th Cir. 1975); *Bounty Trading Corp. v. S.E.K. Sportswear, Ltd.*, 48 A.D.2d 811, 370 N.Y.S.2d 4 (1975). But the rule of strict compliance is not dictated by the language of the controlling statute, Uniform Commercial Code—Letters of Credit, sections 4–5–101 to 117, C.R.S. 1973 (1980 Supp.). Section 4–5–114(1), C.R.S. 1973, merely requires that the issuer honor a draft or demand for payment "which complies with the terms of the relevant [letter of] credit..." Specifically, the code does not state whether strict compliance is necessary or "substantial performance" is sufficient. It was apparently a conscious decision of the drafters of the uniform act which is the source of our statute to leave this question unresolved. *See J. White and R. Summers, Uniform Commercial Code*, section 18–6 at 729 (1980).

The prevailing view stated by the majority not only lacks statutory mandate but also has not been uniformly accepted. A minority position has been adopted by a number of courts, rejecting a formalistic application of the rule of strict compliance where this would not be consistent with the policies underlying the use of letters of credit. As stated by Judge Coffin in *Banco Espanol de Credito v. State Street Bank and Trust Co.*, 385 F.2d 230 (1st Cir. 1967), cert. denied 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 163 (1968):

> But we note some leaven in the loaf of strict construction. Not only does *haec verba* not control absolutely [citation omitted], but some courts now cast their

eyes on a wider scene than a single document. We are mindful, also, of the admonition of several legal scholars that the integrity of international transactions (i.e., rigid adherence to material matters) must somehow strike a balance with the requirement of their fluidity (i.e., a reasonable flexibility as to ancillary matters) if the objective of increased dealings to the mutual satisfaction to all interested parties is to be enhanced. *See e.g., Mentschicoff, How to Handle Letters of Credit,* 19 Bus. Lawyer 107, 111 (1963). *Banco Espanol de Credito v. State Street Bank and Trust Co., supra,* at 234.

Other cases have also recognized that non-material variations from the terms of a letter of credit do not justify the issuer in dishonoring a draft or demand for payment. *E.g., Flagship Cruises, Ltd. v. New England Merchants Nat. Bank of Boston,* 569 F.2d 699 (1st Cir. 1978); *U.S. Industries, Inc. v. Second New Haven Bank,* 462 F.Supp. 662 (D.Conn. 1978); *Bank of America Nat. Trust and Savings Ass'n. v. Liberty Nat. Bank and Trust Co. of Oklahoma City,* 116 F.Supp. 233 (W.D.Okla. 1953), *aff'd.* 218 F.2d 831 (10th Cir. 1955); *First Nat. Bank of Atlanta v. Wynne,* 149 Ga.App. 811, 256 S.E.2d 383 (1979);[1] *see also, 3 Anderson, Uniform Commercial Code,* section 5–101:3 at 350 (1971).

In the instant case, the majority found that the County's submission of a demand draft rather than the fifteen-day sight draft required by the letters of credit rendered the presentment defective.[2] In my opinion this is the sort of non-material, technical condition which should properly be treated under a standard of substantial rather than strict compliance.[3]

There is no danger that the Bank would be misled by the use of the demand draft, nor did the use of that draft place the Bank at risk by providing a basis for its customer Woodmoor to refuse reimbursement. In this context, the Bank's contention is no more than a technical defense which frustrates equity without furthering the policies and purposes underlying the use of letters of credit.

I am not unmindful of the need for certainty in letter of credit transactions, where a bank's function is designed to be primarily ministerial, *see, e.g., Far Eastern Textile, Ltd. v. City National Bank and Trust,* 430 F.Supp. 193, 196, 197 (E.D.Ohio 1977). However, I believe that upholding the County's claim in this case would require only a limited but beneficial exception to the general rule of strict compliance. The alleged nonconformance did not relate to the underlying transaction. Rather, the nonconformity concerned only a provision designed to assure the Bank adequate time to review and consider the adequacy of the demand for payment. Thus, I would hold only that non-material defects, independent of any requirements relating to the underlying transaction, do not excuse the duty to honor a letter of credit.[4] This would avoid placing the issuer in the undesirable position of choosing between a suit by the beneficiary of a letter of credit and the risk of refusal of reimbursement by the customer who obtained that letter, while simultaneously avoiding the assertion of a technical defense to defeat payment where that payment would not place the issuer at risk.

Of course, the Bank was free in this case to inform the County that the demand draft

---

1. Some of the cases relevant to this issue are pre-code law. Those cases nevertheless appear to be of continuing vitality. Section 4–1–103, C.R.S. 1973; *see also, J. White and R. Summers, Uniform Commercial Code,* section 18–6 at 729 (1980).

2. Although I conclude that substitution of a demand draft for the fifteen-day sight draft required by the letters of credit does not excuse the Bank from all liability, this is not to suggest that the County could demand immediate payment. As noted *infra,* the Bank had a right to insist upon the fifteen-day review period, and

the County could not unilaterally impair that right.

3. It is of interest on the issue of materiality that the Bank made no mention of the fact that the drafts were demand drafts in its letter of January 5, 1976, dishonoring the drafts and stating its reasons.

4. That holding would not be inconsistent with those cases requiring strict compliance with letter of credit requirements necessary to ensure that a substantive condition precedent to

was improper and that payment would be made as if a fifteen-day sight draft had been submitted. The County could not unilaterally deprive the Bank of the fifteen-day period for payment prescribed by the letter of credit. But the Bank should not be able to elevate a minor nonconformance into a total exoneration from liability. Neither existing law nor sound policy requires this result.

I would affirm the decision of the court of appeals.

ROVIRA, J., joins in this opinion.

payment has been met. *See, e.g., Courtaulds North America, Inc. v. North Carolina Nat. Bank, supra* (*packing lists* which were attached to invoices accompanying draft by beneficiary and which stated that the shipment was 100% acrylic yarn did not satisfy requirement that *invoices* specify shipment was 100% acrylic yarn); *Far Eastern Textile, Ltd. v. City National Bank and Trust, supra* (requirement that principal sign purchase orders evidencing underlying transaction not satisfied by the signature of an agent on those orders). When the disputed condition relates to the underlying transaction, a standard of strict compliance may well be preferable. Thus, if the nonconformance had related to the requirement that the County certify Woodmoor's failure to construct the agreed-upon improvements a different question would be presented. In this respect, it is not necessary to apply the rule of substantial compliance as broadly as some courts have. *See, e.g., U.S. Industries, Inc. v. Second New Haven Bank, supra* (failure to certify expressly that payment for goods had been demanded as required by letter of credit excused where other documents satisfied the purpose of this requirement).