Robert D. BALZANO,
Plaintiff–Appellee,
Cross–Appellant,

v.

UNITED BANK OF DENVER NATIONAL ASSOCIATION, Defendant–Appellant, Cross–Appellee.

No. 86CA0081.

Colorado Court of Appeals,
Div. I.

March 3, 1988.

Rehearing Denied March 31, 1988.

Certiorari Denied Sept. 12, 1988.

Nichols & Kusic, Jon S. Nichols, Denver, for plaintiff-appellee, cross-appellant.

Holme Roberts & Owen, Donald K. Bain, Vicki E. Baer, Katherine J. Peck, Denver, for defendant-appellant, cross-appellee.

PIERCE, Judge.

Defendant, United Bank of Denver National Association (UBD), appeals the trial court judgment for conversion entered in favor of plaintiff, Robert D. Balzano, acting as receiver in liquidation of Aspen Indemnity Corporation (Aspen) and A.I.C. Agency (AIC). We reverse.

Aspen was a licensed insurance company writing property and casualty insurance in the state of Colorado. AIC was the acting insurance agent on behalf of Aspen. Although separate entities, both companies were managed by one president.

This dispute arises from the banking relationship between UBD and both Aspen and AIC. Pursuant to various written agreements, UBD issued numerous irrevocable letters of credit on behalf of Aspen in order to assure the beneficiaries that Aspen's contractual obligations with them would be paid. AIC also executed guarantee obligations on behalf of Aspen for the letters of credit that had been issued.

In August 1984, Aspen became unable to operate its business in the usual manner, and a conservator was appointed by the insurance commissioner. Concerned about its exposure on the letters of credit, UBD requested financial information regarding Aspen's situation. However, UBD was informed that the information was confidential and would not be released.

Thereafter, on August 22, 1984, UBD froze all funds contained in both Aspen and AIC accounts. These funds were then transferred into two separate, interest-bearing accounts. All deposits received thereafter were placed in one account designated as AIC funds.

The next day, Aspen and AIC demanded release of the frozen funds, but UBD refused. At the time the funds were frozen, no drafts had been presented for payment on the irrevocable letters of credit.

On August 28, 1984, Aspen was declared insolvent to the extent of $5,448,000. Plaintiff was later appointed to act as receiver in liquidation for both Aspen and AIC, which had also become insolvent.

On September 5, 1984, UBD received the first draft for payment on the irrevocable letters of credit. UBD subsequently paid out a total of $892,100 on drafts later submitted.

Thereafter, plaintiff brought this action claiming that UBD had converted the funds which had been seized on August 22, 1984. After trial to the court, judgment was entered in favor of plaintiff and UBD appeals. Plaintiff cross-appeals the trial court's denial of attorney fees.

UBD contends that at the time the funds were frozen, it held a perfected security interest in the accounts; and therefore, it should have had its security restored when a conservator was appointed. We agree.

The record shows that each letter of credit agreement provided, in pertinent part, that:

"All property belonging to [Aspen is] hereby pledged as security for all liabilities."

These letters of credit also provided that:

"[U]pon ... commencement of any proceeding under any bankruptcy, reorganization, arrangement, insolvency, or other proceedings relating to the relief of creditors by or against [Aspen] ... all Liabilities ... shall become immediately due and payable ... and thereafter [UBD] shall have the remedies of a secured party under the Uniform Commercial Code...."

Similar provisions in the guaranteed obligations executed by AIC provided, in pertinent part, that:

"[AIC] hereby grants a security interest to [UBD] in such property and funds in the possession or control of the bank."

Thus, upon the appointment of the conservator by the insurance commissioner, UBD properly exercised its contractual rights under the agreement to seize the security pledged by both Aspen and AIC. Further, such conduct is specifically authorized by the statute which regulates insurance companies. *See* § 10-3-509, C.R.S. (1987 Repl.Vol. 4A) (secured party may resort to the security).

Plaintiff contends that no demand was made on any of the letters of credit prior to the freeze; and therefore, because only a contingent liability existed, UBD improperly resorted to its security before it had the legal right to do so. We disagree.

An irrevocable letter of credit is generally used as a basis to secure a bank customer's promised performance to a third party. *See Colorado National Bank v. Board of County Commissioners*, 634 P.2d 32 (Colo. 1981). A letter of credit obligates the bank to honor any demand for payment thereunder which conforms to the terms of the credit without reference to the holder's compliance with the terms of the underlying contract that gave rise to the credit. *See* § 4-5-114, C.R.S. (Official Comment 1); *Colorado National Bank v. Board of County Commissioners, supra.* In this regard, irrevocable letters of credit are closely akin to guarantee contracts because, if for any reason the bank's customer fails to perform, the bank is liable without regard to the rights of the contracting parties. *See Colorado National Bank v. Board of County Commissioners, supra.* Thus, although not considered absolute liabilities because a proper demand must first be made, letters of credit are actual liabilities of the bank. *See Colorado National Bank v. Board of County Commissioners, supra* (fn. # 2.).

Here, the letter of credit contracts specifically authorized UBD to seize the security in order to protect itself against liabilities arising out of the letters of credit. Therefore, because the irrevocable letters of credit which had been extended were actual liabilities of the bank, UBD was authorized to seize the funds pursuant to the written agreements, and no action for conversion may lie. *See Glenn Arms Associates v. Century Mortgage & Investment Corp.*, 680 P.2d 1315 (Colo.App.1984).

In light of our disposition, we need not address UBD's remaining contentions, nor do we address plaintiff's cross-appeal for attorney fees.

The judgment is reversed and the cause is remanded with directions to enter judgment in favor of UBD.

CRISWELL and HUME, JJ., concur.